IN THE UNITED STATES DISTRICT COURT OF ILLINOIS
FOR THE NORTHERN DISTRICT
WESTERN DIVISION

**08 C 50008**

| | |
|---|---|
| Travelers Casualty and Surety Company of America, | ) |
| Plaintiff, | ) Case No.: |
| v. | ) Judge: |
| Young Construction & Paving, LLC; Karen B. Young; Gordon T. Young; Jeffrey D. Young; Monica L. Young; Joseph Wells; Terri Wells; Luke D. Vander Bleek; and Joan L. Vander Bleek, | ) ) ) ) ) ) |
| Defendants. | ) |

**JUDGE KAPALA**
**MAGISTRATE JUDGE MAHONEY**

## TRAVELERS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION AGAINST THE INDEMNITORS

Travelers Casualty and Surety Company of America ("Travelers" or "Surety"), by and through its attorneys of Hinshaw & Culbertson LLP, sets forth the following Memorandum of Law in Support of its Motion for Preliminary Injunction against the Defendants (referred to collectively as "Indemnitors" or "Defendants").

### I.
### Introduction

Travelers brings its Motion for Preliminary Injunction to compel the Indemnitors to abide by their contractual obligations and provide Travelers with collateral security to secure Travelers' obligations under the performance and payments bonds (the "Bonds") it issued on behalf of Young Construction and Paving, LLC ("Young Construction"), as principal, in connection with Young Construction's performance of construction services for the Jeffrey Energy Center, Flue Gas Desulphurization Rebuild Project (the "Project"). Pursuant to the terms of the Indemnity

1

Agreement entered into between the parties, in the event that Travelers makes a demand for collateral and/or the Indemnitors divert trust funds, the Indemnitors must deposit with Travelers cash or collateral security in an amount satisfactory to protect Travelers from loss. A copy of the Indemnity Agreement is attached hereto as Exhibit "A," the terms of which are incorporated as though set forth fully herein.

As detailed in Travelers' Complaint in the instant action, the Indemnitors have represented to Travelers that they do not have sufficient funds to complete the project, Young Construction's insurance coverage for the Project has lapsed, Young Construction has voluntarily terminated its contract on the Project and ceased performing its construction work, the Defendants have failed to provide Travelers access to books and records, and Young Construction has used the bonded contract funds for purposes other than to pay project vendors and to complete the Project. As a direct consequence of Young Construction's and the Indemnitors' actions, Travelers faces significant exposure to discharge its obligations under the Bonds.

Based upon the foregoing circumstances, Travelers demanded that the Indemnitors indemnify and hold Travelers harmless, post collateral, and provide Travelers access to Young Construction's books and records. The Indemnitors have not complied with Travelers' demands as required by the terms of the Indemnity Agreement. Accordingly, Travelers seeks injunctive relief from this Court compelling the Indemnitors to discharge their contractual obligations and provide Travelers with the collateral security to which it is entitled and provide Travelers access to their books and records.

## II.
## Factual Background

Young Construction entered into a construction contract with Westar Energy for improvements to the Jeffrey Energy Center, Flue Gas Desulphurization Rebuild Project. Pursuant to that contract, Young Construction was required to obtain and provide a payment and performance surety bond for the Project to guarantee Young Construction's performance obligations under the contracts and to ensure the payment obligations of Young Construction to its subcontractors and materialmen that it engaged for the Project, subject to the terms of the bonds, the contract, and the law. Pursuant to the request of Young Construction, Travelers, as surety, issued a payment and performance bond (the "Bond") to Westar Energy, Inc. as Obligee, on behalf of Young Construction, as principal, for the Project guaranteeing both Young Construction's contractually required performance obligations and Young Construction's payment obligations to persons or entities that provided labor and/or material for the Project as determined by the terms of the Bond, the contract, and the law.

In exchange for the issuance of the Bond and under certain express conditions, the Indemnitors entered into a General Agreement of Indemnity (the "Indemnity Agreement") in favor of Travelers. *See* Exhibit "A." In reliance and in consideration of the Indemnitors executing the Indemnity Agreement, Travelers issued the Bond with a penal limit in the amount of $6,696,974 on behalf of Young Construction for the Project.

During construction of the Project, Travelers learned from the Indemnitors they lacked sufficient funds to complete the project and Young Construction's insurance coverage for the Project lapsed. Recently, Young Construction voluntarily terminated its contract with Westar for the Project. Based upon this evidence of financial insecurity, Travelers requested access to the Indemnitors' books and records pursuant to the terms of the Indemnity Agreement. As of the

3

date of Motion and Memorandum, the Indemnitors have failed to provide Travelers access to books and records. Furthermore, it appears that Young Construction has used bonded contract funds for improper purposes, purposes other than to pay project vendors and to complete the Project. As of December 31, 2007, Travelers preliminary estimate of its exposure under the Bond is an amount in excess of $600,000.00. This amount is based upon Travelers' obligations under the Bond to secure the completion of the Project and pay unpaid Project vendors. The amount may increase after Travelers has completed its investigation.

Travelers' action against the Indemnitors seeks to require the Indemnitors to honor their duties to, among other things, indemnify and hold Travelers harmless from all Bond claims and Project completion costs as well as to reimburse Travelers for any attorneys' fees, consulting fees, and expenses it incurs in connection with Bond claims and in enforcing the terms of the Indemnity Agreement.

Pursuant to the express terms of the Indemnity Agreement, all of the Indemnitors are required to indemnify and hold Travelers harmless from and against all losses in connection with any bond and in enforcing the terms of the Indemnity Agreement. *See* Exhibit "A," Indemnity Agreement ¶ 3. Further, the Indemnity Agreement requires the Indemnitors to deposit with the Surety, upon demand, collateral for an amount determined by Travelers and for any contract funds improperly used by the Indemnitors and to allow Travelers to inspect their books and records. *See* Exhibit "A," Indemnity Agreement ¶ 5.

As set forth in paragraph 9 of Kimberly Zanotta's Affidavit, Travelers has demanded that the Indemnitors indemnify it, to post collateral with Travelers, and to allow Travelers access to their books and records. A copy of Kimberly Zanotta's Affidavit is attached hereto as Exhibit "B," the

terms of which are incorporated by reference as though set forth fully herein. The Indemnitors have failed to indemnify Travelers, have failed to post collateral with Travelers for the full amount of Travelers' demand, and have not allowed Travelers access to their books and records. Exhibit "B," Zanotta Affidavit ¶ 9.

Travelers' intention with regard to the collateral it has demanded is to hold the collateral in escrow as security for its obligations under the Bond. *See* Exhibit "B," Zanotta Affidavit ¶ 10. To the extent required, the collateral will be utilized to cover all of Travelers' losses and expenses under the Bond as contemplated by the Indemnity Agreement. *Id.* Should any collateral remain after Travelers' bond losses and expenses have been completely satisfied or its obligations are otherwise discharged, those funds will be returned to the appropriate Indemnitor(s). *Id.*

## III.
## Legal Argument

To obtain a preliminary injunction, Travelers must demonstrate a likelihood of success on the merits, irreparable harm if the preliminary injunction is denied, and the inadequacy of any remedy at law. Once this threshold showing is made, this Court must balance (1) the harm to plaintiff if the preliminary injunction is wrongfully denied against the harm to the defendants if the injunction is wrongfully granted, and (2) the impact on persons not directly concerned in the dispute. *Cooper v. Salazar,* 196 F.3d 809, 813 (7th Cir. 1999).

Travelers is entitled to the relief sought based on its contractual rights under the terms of the Indemnity Agreement. In addition, Travelers' common law right of exoneration and the common law remedy known as *quia timet* entitle Travelers to the relief sought. *See* RESTATEMENT OF LAW (THIRD), SURETYSHIP & GUARANTY §21(1)(b), cmts. j and k. Based upon

the circumstances in the instant action and the law, Travelers's right to injunctive relief in this case is manifest under each and every one of the factors applicable to this analysis.

1.  **Travelers Has a High Probability Of Success On The Merits.**

Travelers seeks specific performance of the collateral security obligations of the Indemnity Agreement between the parties requiring the Defendants to post collateral with it to secure Travelers' obligations under the bonds. Travelers has made this request upon the Indemnitors in response to Young Construction's voluntary termination of its contract with Westar and its resulting inability to complete its performance of the Project pursuant to that contract. To date, none of the Indemnitors have complied with Travelers' request and Travelers continues to face exposure under its Bonds.

As discussed in Section II above, the Indemnity Agreement requires the Indemnitors, upon demand by surety, to deposit collateral with Travelers to cover any anticipated loss and to cover any contract funds improperly used by the Indemnitors. To date, none of the Indemnitors have indicated any willingness to comply with their obligations under the Indemnity Agreement.

Under similar circumstances, numerous other courts have awarded injunctive relief to plaintiffs in the position of Travelers in the form of an order for specific performance of a collateral security obligation. *See, e.g., United States Fidelity & Guaranty Co. v. Feibus*, 15 F. Supp. 2d 579, 588 (M.D. Pa. 1998) (Surety entitled to specific performance of collateral security provision in an indemnity agreement to protect against "future losses and expenses."); *see also Safeco Insurance Co. v. Schwab*, 739 F.2d 431, 433-34 (9th Cir. 1984) (Indemnity agreement with surety should be construed as requiring provision of collateral security upon demand by surety and prior to actual bond loss.); *American Motorists Insurance Co. v. United Furnace Co.*, 876 F.2d 293, 301-02 (2nd

Cir. 1989) (Surety was entitled to summary judgment on its claim for collateral security under the terms of its indemnity agreement with its principal.); *United Bonding Insurance Co. v. Stein*, 273 F. Supp. 929, 929-930 (E.D. Pa. 1967)("...The only conditions precedent to defendants' obligation [to provide collateral security to the surety] were the plaintiff's estimate that a reserve was necessary and its demand upon defendants for current funds in the amount of such reserve. Once these conditions are fulfilled equity will specifically enforce such a promise..."); *Eakin v. Continental Illinois National Bank and Trust Company of Chicago*, 121 F.R.D. 363, 366 (N.D. Ill. 1988) (Specific performance of collateral security obligation was available to liquidator for surety that had yet to suffer any damages or make any payments under its bond.); *Ticor Title Ins. Co. v. Middle Street Office Tower A Associates*, 768 F. Supp. 390, 391-92 (D. Me. 1991) (Specific performance is available "....as a remedy for breach of an indemnity agreement when it is in the nature of a collateral security agreement."); *Safeco Insurance Co. v. Criterion Investment Corp.*, 732 F. Supp. 834, 843 (E.D. Tenn. 1989) (Surety was entitled to collateral security to protect it from prospective losses under litigation bond.). See also the Orders issued by the Honorable Judge Moran in *United States Fidelity and Guaranty Insurance Company v Cler Construction Services, Inc., et al.*, 2003 WL 1873926 (N.D. Ill. 2003)(Court granted surety's motion for preliminary junction and ordered indemnitors to post collateral) and the Honorable Judge Plunkett in *Travelers Casualty and Surety Company v. Craig Ockerlund, et al.*, 2004 WL 1794915 (N.D. Ill. 2004).

In enforcing the terms of an indemnity agreement that contains a promise to provide collateral security prior to an actual bond loss, courts have looked to the express language of the indemnity agreement to determine what triggers the surety's right to properly demand collateral security and obtain specific performance of that obligation. *See, e.g., American Motorists Insurance Co. v. Pennsylvania Beads Corp.*, 983 F. Supp. 437, 440 (S.D.N.Y. 1997); *United Furnace Co.*, 876

F.2d at 299-300. In both *Pennsylvania Beads* and *United Furnace Co.*, the court analyzed an indemnity agreement which provided that "[a]ny demand upon [Surety] by the [United States] shall be sufficient to conclude that a liability exists and [Principal] shall then place [Surety] with sufficient funds as collateral security to cover the liability." *Pennsylvania Beads*, 983 F. Supp. at 440; *United Furnace Co.*, 876 F.2d at 299. In both cases, the courts considered whether the necessary triggering event had occurred, i.e., a demand under the principal's bond. *Pennsylvania Beads*, 983 F. Supp. at 440; *United Furnace Co.*, 876 F. 2d at 301. Finding that the necessary triggering event had taken place, the courts then enforced the express terms of the indemnity agreement and granted summary judgment to the sureties on their claims for specific performance of the principal's collateral security obligation. *Pennsylvania Beads*, 983 F. Supp. at 440; *United Furnace Co.*, 876 F.2d at 302.

In *United Fire Cas. Co. v. Coggeshall Constr. Co., Inc.*, 1991 WL 1699147 (D.C. Ill. 1991), the Court upheld the grant of a temporary restraining order requiring indemnitors of a surety to post collateral to secure the surety from losses. In so doing, the court noted the common law doctrine of *quia timet* as applied by the Seventh Circuit. Namely, in *Western Casualty & Surety Company v. Biggs*, 217 F.2d 163 (7th Cir. 1954), the Seventh Circuit Court of Appeals recognized:

> It is well settled that a court of equity will, at the request of a surety, seize funds due its principal and apply them to the principal's debt if the Surety can show that: the debts are currently due, the principal is unable or refuses to pay them, and if they are not paid the Surety will become liable....

217 F.2d at 165. The court in the *Coggeshall* case also affirmed the enforcement of a collateral posting provision of the indemnity agreement:

> In the circumstances, the Court finds that Plaintiff Surety is entitled to specific performance of the indemnity agreement provision cited above. [requiring posting collateral] The Court further finds that the rendition of a judgment for money damages at the end of the case without according Plaintiff Surety the relief of specific performance pursuant to the cited

provision of the indemnity agreement is not an adequate remedy and would irreparably harm Plaintiff Surety by depriving it of pre-judgment relief to which it is contractually entitled.

1991 WL 169147 at *2 (citing *Doster v. Continental Casualty Co.*, 105 So. 2d 83 (Ala. 1959); *Milwaukee Constr. Co. v. Glen Falls Ins. Co.*, 367 F.2d 964 (9th Cir. 1966); *United Bonding Ins. Co. v. Stein*, 273 F.Supp. 929 (E.D.Pa. 1967); *Safeco Ins. Co. v. Schwab*, 739 F.2d 431 (9th Cir. 1984)).

The facts of this case are similar to the facts of the cases discussed above. Based upon the Indemnitors actions and admissions to Travelers, Travelers faces imminent liability under the Bond. As a consequence, and in accordance with the terms of the Indemnity Agreement, Travelers has demanded that the Indemnitors provide it with collateral security in an amount necessary to discharge Travelers obligations under the Bond. The Indemnitors have failed and refused to comply with this demand.

Under the holdings in *Pennsylvania Beads*, *United Furnace Co.*, *United Fire Cas. Co.*, and *Cler Construction Services, Inc.*, Travelers is entitled to specific performance of the collateral security obligations of the Indemnity Agreement by the Indemnitors. *See also Stein*, 273 F. Supp. at 929-30. The rationale for this conclusion is apparent from the cases that have addressed this issue. It is a general principle of equity that, "[B]efore paying a debt[,] a surety may call upon the principal to exonerate him by discharging it; he is not obliged to make inroads into his own resources when the loss must in the end fall upon the principal." *Morely Construction Co. v. Maryland Casualty Co.*, 90 F.2d 976, 977 (8th Cir. 1937). Moreover, courts addressing this problem have noted, "[I]f a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced." *Feibus*, 15 F. Supp. 2d at 588; *see also Marine Midland Trust Co. v. Alleghany Corp.*, 28 F. Supp. 680, 683 (S.D.N.Y. 1939). Without

6268489v1 026

specific enforcement of the collateral security obligation, the surety would be relegated to an action for damages and would share his principal's property with other unsecured creditors, contrary to the terms of its bargain with its principal. *Marine Midland*, 28 F. Supp. at 683. Therefore, in order to protect the surety's bargain, courts will grant it relief in the form of specific performance of the collateral security obligation. *Feibus*, 15 F. Supp. 2d at 588.

Travelers has satisfied all conditions precedent to its right to demand collateral security from the Indemnitors in this case. Moreover, Travelers has made the demand upon the Indemnitors, and the Indemnitors have failed to honor their contractual duty to provide such security. In light of the express terms of the Indemnity Agreement and Travelers' satisfaction of all conditions precedent to the Indemnitors' joint and several duties to act, Travelers has a high probability of success in proving its claim and is entitled to specific performance of the collateral security provision of the Indemnity Agreement.

2. **Without Specific Performance Of The Indemnity Agreement, Travelers Will Suffer Irreparable Harm In That It Will Forever Lose A Valuable Contractual Right.**

Without injunctive relief in the form of specific performance of the collateral security obligations of the Indemnity Agreement, Travelers will suffer irreparable harm. Namely, Travelers will be unable to avail itself of contractual rights, which are the benefit of the bargain it reached with the Indemnitors in entering into the Indemnity Agreement and issuing the Bond on behalf of Young Construction.

Travelers bargained with the Indemnitors for a special security arrangement, which was the posting of collateral security by the Indemnitors, on demand, to cover what Travelers anticipates its loss to be and for any amount for contract funds improperly used by the Indemnitors. This special security arrangement enhances Travelers' ability to be protected in the event of a bond loss. This

court must specifically enforce Travelers' rights in this regard or they will be forfeited and Travelers will lose an important right that was central to the Indemnity Agreement.

Various courts have illustrated the different reasons why the harm to a surety in Travelers' position is immediate and irreparable in the event that specific performance of a collateral security obligation is not available. First, the surety in Travelers' position that possesses a right to collateral security has negotiated an arrangement whereby the principal will bear the responsibility for providing financial security in the event of a threatened or potential bond liability. *See United Furnace Co.*, 876 F.2d at 301. Failure on the part of the surety to receive the bargained-for security makes the surety's injury "real and immediate." *Id.* at 302. Second, absent enforcement of the collateral security obligation, a surety that bargained for this "special" security would find itself relegated to the same status as any other unsecured creditor with respect to the assets of its principal. *See Pennsylvania Beads*, 983 F. Supp. at 441. Third, without obtaining specific performance of the collateral security obligations, the surety would forever lose its ability to assert these rights. Once payment is made by the surety, the rights become moot. *See Eakin*, 121 F.R.D. at 366; *Wingsco Energy One v. Vanguard Groups Resources*, 1989 WL 223756 at 3 (S.D. Tex. 1989). For these reasons, as more than one court has noted, the damage resulting from the failure to give security is not ascertainable, and the legal remedy is therefore inadequate. *See Bib Construction Co. v. Fireman's Insurance Co.*, 625 N.Y.S. 2d 550, 552 (App. Div. 1995).

The Indemnitors' refusal to abide by their collateral security obligations under the Indemnity Agreement have jeopardized crucial rights afforded to Travelers pursuant to the parties' agreement. As case law illustrates, monetary damages for breach of these obligations will not make Travelers whole and, consequently, Travelers will be forever deprived of the security arrangement to which it was entitled. Accordingly, Travelers is subject to irreparable harm if its rights to specific

performance of the collateral security obligations of the Indemnity Agreement are not enforced.

    **3.    The Balance Of Harms Favors Travelers Because Its Rights Will Be Forever Damaged Without Injunctive Relief While The Rights Of The Indemnitors Will Be Left Unchanged In The Event That An Injunction Is Issued.**

Without the remedy of specific performance, Travelers' rights under the Indemnity Agreement to collateral security will be forever prejudiced. By contrast, in the event that this court orders specific performance of the collateral security provision in the Indemnity Agreement, all parties will be placed in the position which they bargained for at the time the Indemnity Agreement was executed. Travelers will receive the collateral security to which it is entitled, and the Indemnitors will assume the financial risk associated with the bonds.

Accordingly, because the balance of hardships favors Travelers, this court should grant Travelers the injunctive relief it has requested.

    **4.    Public Policy Favors The Issuance Of Injunctive Relief.**

The final factor to be weighed by this court is that of the interests of public policy in this dispute. Travelers can conceive of no public policy interest served by allowing the Indemnitors to disregard their obligations under the Indemnity Agreement without consequence. Such circumstances would only undermine the predictability intended in commercial settings by the execution of a written contract such as the Indemnity Agreement. Moreover, allowing parties to disregard their contractual obligations in such clear circumstances as those present in this case can only promote contractual malfeasance in other settings.

The Bond here protects private parties from one party's failure to live up to its contractual obligations. Further, the Bond ensures that the entities that performed the services or provided the materials to the Project are paid. The public is served by the protections provided by the Bond since it provides another method to ensure that parties are required to live up to their contractual

6268489v1 026

obligations. At least one court has noted that the purpose of collateral security obligations such as those that Travelers seeks to enforce, are "neither unconscionable, nor void as against public policy." *See Pennsylvania Beads*, 983 F. Supp. at 440. In light of the foregoing, it is clear that public policy favors issuance of the injunctive relief requested by Travelers.

## IV. Conclusion

For the forgoing reasons, Travelers Casualty and Surety Company of America's Motion for Preliminary Injunction should be granted and the Indemnitors should be ordered to place collateral with Travelers in the initial amount of $600,000.

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA

By: /s/ John E. Sebastian
    One of its Attorneys

James M. Allen
Hinshaw & Culbertson LLP
100 Park Avenue, P.O. Box 1389
Rockford, Illinois 61105
Telephone: 312-490-4900
Facsimile: 815-490-4901
jallen@hinshawlaw.com

John E. Sebastian, ARDC # 6230240
Albert L. Chollet III, ARDC # 6292557
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
Telephone: 312-704-3000
Facsimile: 312-704-3001
jsebastian@hinshawlaw.com