UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>YOUNG CONSTRUCTION & PAVING, LLC; KAREN B. YOUNG; GORDON T. YOUNG; JEFFREY D. YOUNG; MONICA L. YOUNG; JOSEPH WELLS; TERRI WELLS; LUKE D. VANDER BLEEK; and JOAN L. VANDER BLEEK,<br><br>Defendants.<br><br>and<br><br>JOSEPH WELLS; TERRI WELLS; LUKE D. VANDER BLEEK; and JOAN L. VANDER BLEEK,<br><br>Counter-Plaintiffs/Third-Party Plaintiffs,<br><br>vs.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br><br>Counter-Defendant,<br><br>and<br><br>TRISSEL, GRAHAM AND TOOLE, INC., a corporation; DANIEL CURRAN; ROGER A. COLMARK; and SAUK VALLEY BANK & TRUST COMPANY,<br><br>Third-Party Defendants. | )<br>)<br>)<br>)<br>)<br>)  No. 8-CV-50008<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**AMENDED THIRD PARTY COMPLAINT**

NOW COME the Third-Party Plaintiffs, JOSEPH WELLS, TERRI WELLS, LUKE D. VANDER BLEEK, and JOAN L. VANDER BLEEK, by RENO & ZAHM LLP, by Robert A. Fredrickson and Jack D. Ward, and for their Amended Third-Party Complaint against the Third-Party Defendants, TRISSEL, GRAHAM AND TOOLE, INC., a corporation (hereinafter referred to as "TRISSEL"), DANIEL CURRAN (hereinafter referred to as "CURRAN"), ROGER A. COLMARK (hereinafter referred to as "COLMARK"), and SAUK VALLEY BANK & TRUST COMPANY (hereinafter referred to as "SAUK VALLEY"), state as follows:

## COUNT I

vs.
Trissel, Graham and Toole, Inc.

NOW COME the Defendants/Third-Party Plaintiffs, JOSEPH WELLS, TERRI WELLS, LUKE D. VANDER BLEEK, and JOAN L. VANDER BLEEK, by RENO & ZAHM LLP, by Robert A. Fredrickson and Jack D. Ward, and for their Third-Party Claim against the Third-Party Defendant, TRISSEL, GRAHAM AND TOOLE, INC., a corporation, state and allege as follows:

1.     That JOSEPH WELLS, TERRI WELLS, LUKE D. VANDER BLEEK, and JOAN L. VANDER BLEEK all reside within the United States District Court, Northern District of Illinois, Western Division, and are the individuals referred to as the Defendants in case number 08-CV-50008, and are the signatories on the indemnity agreement referred to in said Complaint.

2.     That the Counter-Defendant, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA (hereinafter referred to as "TRAVELERS"), is a company that issued the surety bond in question and is the insurance company involved in the bonding, surety on the bond, and indemnity on the bond with regard to Young Construction and Paving, LLC (hereinafter referred to as "Young Construction") and specifically the Westar project related thereto.

3.     That the Third Party Defendant, TRISSEL, is a company having its principal place of business at 228 Emerson Place, Suite 200, Davenport, Iowa 52801, which agency was the authorized broker and agent for TRAVELERS relative to all aspects of the procurement and issuance of the TRAVELERS surety bond on the Westar/Young Construction project.

4.     That CURRAN was an agent and employee of TRISSEL and as such functioned as the contact agent and broker relative to procurement from TRAVELERS of the Young Construction surety bond, and in so doing, CURRAN was the agent for TRISSEL relative to all TRAVELERS requirements, including indemnities, obtained from Vander Bleek and Wells as part of the surety bonding transaction involving Young Construction on the Westar project.

5.     That the Third Party Defendant, COLMARK, is a private certified public accountant performing accounting services in the City of Sterling, State of Illinois, and specifically with regard to Young Construction.

6.     That the Defendant, SAUK VALLEY, is a state bank having offices in Sterling, Illinois.

7.    That attached hereto as Exhibits 1 and 1A are a reviewed statement furnished by COLMARK and letter representation by COLMARK furnished to CURRAN on or about May 2, 2007.

8.    That attached hereto as Exhibits 2 and 2A is a reviewed statement and letter representation furnished by COLMARK to CURRAN on May 3 or 4, 2007.

9.    That COLMARK offered accounting opinions as to the reliability of a certain statement (second reviewed statement, Exhibit 2) reviewed by him of Young Construction which contained material errors and omissions that if disclosed would have resulted in substantial changes of the represented net worth of Young Construction from $708,000 to a negative insolvent position.

10.    That the second reviewed statement (Exhibit 2) falsely represented SAUK VALLEY's loan position as to Young Construction by only showing a $366,972 loan secured by inventory and receivables and a long term loan of $234,930 secured by real estate, with the Young Construction equipment, building and improvements, net of depreciation of $1,611,208 and construction project account receivables at $690,895.

11.    That during May, 2007 as specifically described on May 23, 2007, SAUK VALLEY's loans to the Young Construction individuals and entities as set out in Exhibit 3 attached hereto totaled in excess of $5.4 million.

12.    That CURRAN was aware of the details of the Vander Bleek/Wells financing transaction to Young Construction as COLMARK had faxed to CURRAN with the reviewed statement a two page outline (Exhibit 4 attached) of said financing transaction.

13.    That said second reviewed statement was specifically presented to induce the reliance of both Luke Vander Bleek and Joseph Wells to procure Young Construction loans from Luke Vander Bleek and Joseph Wells to Young Construction of $800,000, for Luke Vander Bleek and Joseph Wells to subordinate their collateral position on loans, including an additional $200,000 loaned by Luke Vander Bleek prior to the presentment of the reviewed statement and further to induce Luke Vander Bleek and Joseph Wells and their respective spouses with the knowledge of CURRAN to rely and therefore indemnify TRAVELERS relative to a certain surety bond that TRAVELERS issued on the Westar/Young Construction contract.

14.    That the representations in the second reviewed statement were false and incorrect and showed a difference in net worth and income between the first and second reviewed statement during the one day interval as follows:

| Reviewed Statement | Net worth | Net income |
| --- | --- | --- |
| First (May 2, 2007) | ($67,285) | $338,850 |
| Second (May 4, 2007) | $708,545 | $471,621 |

15.    That in addition to the representations in the second reviewed statement being false, CURRAN knew that COLMARK had changed the numbers so that the net worth number would be in the range necessary for TRAVELERS to consider underwriting a surety bond in the amount needed for the Young Construction Westar project.

16.    That CURRAN also knew or should have known that the second reviewed statement was false in that:

(a)    He knew that showing Young Construction financials on a non-consolidated basis (excluding other Young Construction entities) misrepresented the serious financial problems of Young Construction;

(b)    He knew that COLMARK had changed the net worth and income numbers substantially between the first and second reviewed statements;

(c)    He knew or should have known that Young Construction did not own the real estate shown as an asset on the second reviewed statement;

(d)    He knew or should have known that Young Construction had substantial loans from SAUK VALLEY that were not shown as liabilities on the reviewed statement; and

(e)    He knew the true Young Construction financials did not support a surety bond under TRAVELERS underwriting standards; and that Young Construction would have to cease operations if Young Construction did not receive private loans from Wells and Vander Bleek and obtain bonding on the Westar project.

17.    That at all times material hereto CURRAN was the agent and employee of TRISSEL and was acting within the scope of said employment and agency. At said time CURRAN was also the agent for TRAVELERS acting within the scope of said agency with regard to procuring the indemnity agreement and the surety bond relative thereto. That information from TRAVELERS concerning said surety bond transaction was communicated to Vander Bleek and Wells through CURRAN, and all information

-6-

from Vander Bleek and Wells to TRAVELERS was communicated to CURRAN for transmittal to TRAVELERS.

18.    That at that time Vander Bleek and Wells were lending money, subordinating their secured position, and entering into an indemnity agreement (May, 2007), CURRAN knew that the Young Construction financial records would not support any surety bond on a consolidated basis.  CURRAN suggested to COLMARK to come up with a statement that would support a bond for the Westar project.

19.    That CURRAN, knowing Vander Bleek and Wells were relying on the second reviewed statement for the financing transaction including indemnity agreement and that Vander Bleek and Wells did not know that the income and net worth representations were false, failed to disclose either the first reviewed statement or his knowledge as to the misrepresentations contained in the second reviewed statement because said disclosure would have caused Vander Bleek and Wells to not proceed with the financing transaction or indemnity agreement.

20.    That Vander Bleek and Wells relied on the second reviewed statement with respect to the financing transaction with Young Construction and the indemnity agreement, and the misrepresentations in the second reviewed statement were a proximate cause of the damages hereinafter alleged.

21.    That Vander Bleek and Wells were damaged in that the $1 million loaned to Young Construction was lost, their security position in the Young Construction assets was valueless, that a claim was made against TRAVELERS on the Westar surety bond,

which TRAVELERS claims triggers a $1 million obligation by Vander Bleek and Wells under the surety indemnity agreement.

22.    That jurisdiction on the Counterclaim/Third Party Claim is based on diversity with regard to TRAVELERS and TRISSEL and based on Rule 14(a) supplemental jurisdiction as to CURRAN, COLMARK, and SAUK VALLEY inasmuch as said claims are part and parcel and arise out of the same factual nexus of the original claims asserted herein by TRAVELERS arising from the Vander Bleek/Wells financing transaction.    The damages claimed herein reasonably occur as a result of the construction default by Young Construction, surety bond obligations of TRAVELERS by virtue of the Young Construction default and Vander Bleek/Wells surety indemnity, and/or the additional sums lost from the loan transactions and subordination of security suffered by Vander Bleek and Wells as a result of the Young Construction non-performance of the Westar contract.

WHEREFORE, the Defendant/Third-Party Plaintiffs pray:

1.    That the Court enter an order granting judgment in favor of Luke Vander Bleek and Joseph Wells against TRISSEL in the sum of $2,000,000 plus costs of suit;

2.    That the Court grant such further and other relief as is fair and equitable.


COUNT II

vs.
Daniel Curran


-8-

NOW COME the Defendants/Third-Party Plaintiffs, JOSEPH WELLS, TERRI WELLS, LUKE D. VANDER BLEEK, and JOAN L. VANDER BLEEK, by RENO & ZAHM LLP, by Robert A. Fredrickson and Jack D. Ward, and for their Third-Party Claim against the Third-Party Defendant, DANIEL CURRAN, state and allege as follows:

1.    That JOSEPH WELLS, TERRI WELLS, LUKE D. VANDER BLEEK, and JOAN L. VANDER BLEEK all reside within the United States District Court, Northern District of Illinois, Western Division, and are the individuals referred to as the Defendants in case number 08-CV-50008, and are the signatories on the indemnity agreement referred to in said Complaint.

2.    That the Counter-Defendant, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA (hereinafter referred to as "TRAVELERS"), is a company that issued the surety bond in question and is the insurance company involved in the bonding, surety on the bond, and indemnity on the bond with regard to Young Construction and Paving, LLC (hereinafter referred to as "Young Construction") and specifically the Westar project related thereto.

3.    That the Third Party Defendant, TRISSEL, is a company having its principal place of business at 228 Emerson Place, Suite 200, Davenport, Iowa 52801, which agency was the authorized broker and agent for TRAVELERS relative to all aspects of the procurement and issuance of the TRAVELERS surety bond on the Westar/Young Construction project.

4.    That CURRAN was an agent and employee of TRISSEL and as such functioned as the contact agent and broker relative to procurement from TRAVELERS

of the Young Construction surety bond, and in so doing, CURRAN was the agent for TRISSEL relative to all TRAVELERS requirements, including indemnities, obtained from the Counter-Plaintiffs as part of the surety bonding transaction involving Young Construction on the Westar project.

5.    That the Third Party Defendant, COLMARK, is a private certified public accountant performing accounting services in the City of Sterling, State of Illinois, and specifically with regard to Young Construction.

6.    That the Defendant, SAUK VALLEY, is a state bank having offices in Sterling, Illinois.

7.    That attached hereto as Exhibits 1 and 1A are a reviewed statement furnished by COLMARK and letter representation by COLMARK furnished to CURRAN on or about May 2, 2007.

8.    That attached hereto as Exhibits 2 and 2A is a reviewed statement and letter representation furnished by COLMARK to CURRAN on May 3 or 4, 2007.

9.    That COLMARK offered accounting opinions as to the reliability of a certain statement (second reviewed statement, Exhibit 2) reviewed by him of Young Construction which contained material errors and omissions that if disclosed would have resulted in substantial changes of the represented net worth of Young Construction from $708,000 to a negative insolvent position.

10.    That the second reviewed statement (Exhibit 2) falsely represented SAUK VALLEY's loan position as to Young Construction by only showing a $366,972 loan secured by inventory and receivables and a long term loan of $234,930 secured by real

estate, with the Young Construction equipment, building and improvements, net of depreciation of $1,611,208 and construction project account receivables at $690,895.

11.    That during May, 2007 as specifically described on May 23, 2007, SAUK VALLEY's loans to the Young Construction individuals and entities as set out in Exhibit 3 attached hereto totaled in excess of $5.4 million.

12.    That CURRAN was aware of the details of the Vander Bleek/Wells financing transaction to Construction as COLMARK had faxed to CURRAN with the reviewed statement a two page outline (Exhibit 4 attached) of said financing transaction.

13.    That said second reviewed statement was specifically presented to induce the reliance of both Luke Vander Bleek and Joseph Wells to procure Young Construction loans from Luke Vander Bleek and Joseph Wells to Young Construction of $800,000, for Luke Vander Bleek and Joseph Wells to subordinate their collateral position on loans, including an additional $200,000 loaned by Luke Vander Bleek prior to the presentment of the reviewed statement and further to induce Luke Vander Bleek and Joseph Wells and their respective spouses with the knowledge of CURRAN to rely and therefore indemnify TRAVELERS relative to a certain surety bond that TRAVELERS issued on the Westar/Young Construction contract.

14.    That the representations in the second reviewed statement were false and incorrect and showed a difference in net worth and income between the first and second reviewed statement during the one day interval as follows:

-11-

| Reviewed Statement | Net worth | Net income |
|---|---|---|
| First (May 2, 2007) | ($67,285) | $338,850 |
| Second (May 4, 2007) | $708,545 | $471,621 |

15.     That in addition to the representations in the second reviewed statement being false, CURRAN knew that COLMARK had changed the numbers so that the net worth number would be in the range necessary for TRAVELERS to consider underwriting a surety bond in the amount needed for the Young Construction Westar project.

16.     That CURRAN also knew or should have known that the second reviewed statement was false in that:

>    (a)    He knew that showing Young Construction financials on a non-consolidated basis (excluding other Young Construction entities) misrepresented the serious financial problems of Young Construction;
>
>    (b)    He knew that COLMARK had changed the net worth and income numbers substantially between the first and second reviewed statements;
>
>    (c)    He knew or should have known that Young Construction did not own the real estate shown as an asset on the second reviewed statement;
>
>    (d)    He knew or should have known that Young Construction had substantial loans from SAUK VALLEY that were not shown as liabilities on the reviewed statement; and
>
>    (e)    He knew the true Young Construction financials did not support a surety bond under TRAVELERS underwriting standards; and that Young Construction would have to cease operations if Young

-12-

Construction did not receive private loans from Wells and Vander Bleek and obtain bonding on the Westar project.

17.    That at all times material hereto CURRAN was the agent and employee of TRISSEL and was acting within the scope of said employment and agency. At said time CURRAN was also the agent for TRAVELERS acting within the scope of said agency with regard to procuring the indemnity agreement and the surety bond relative thereto. That information from TRAVELERS concerning said surety bond transaction was communicated to Vander Bleek and Wells through CURRAN, and all information from Vander Bleek and Wells to TRAVELERS was communicated to CURRAN for transmittal to TRAVELERS.

18.    That at that time Vander Bleek and Wells were lending money, subordinating their secured position, and entering into an indemnity agreement (May, 2007), CURRAN knew that the Young Construction financial records would not support any surety bond on a consolidated basis. CURRAN suggested to COLMARK to come up with a statement that would support a bond for the Westar project.

19.    That CURRAN, knowing Vander Bleek and Wells were relying on the second reviewed statement for the financing transaction including indemnity agreement and that Vander Bleek and Wells did not know that the income and net worth representations were false, failed to disclose either the first reviewed statement or his knowledge as to the misrepresentations contained in the second reviewed statement because said disclosure would have caused Vander Bleek and Wells to not proceed with the financing transaction or indemnity agreement.

-13-

20.    That Vander Bleek and Wells relied on the second reviewed statement with respect to the financing transaction with Young Construction and the indemnity agreement, and the misrepresentations in the second reviewed statement were a proximate cause of the damages hereinafter alleged.

21.    That Vander Bleek and Wells were damaged in that the $1 million loaned to Young Construction was lost, their security position in the Young Construction assets was valueless, that a claim was made against TRAVELERS on the Westar surety bond, which TRAVELERS claims triggers a $1 million obligation by Vander Bleek and Wells under the surety indemnity agreement.

22.    That jurisdiction on the Counterclaim/Third Party Claim is based on diversity with regard to TRAVELERS and TRISSEL and based on Rule 14(a) supplemental jurisdiction as to CURRAN, COLMARK, and SAUK VALLEY inasmuch as said claims are part and parcel and arise out of the same factual nexus of the original claims asserted herein by TRAVELERS arising from the Vander Bleek/Wells financing transactions.    The damages claimed herein reasonably occur as a result of the construction default by Young Construction, surety bond obligations of TRAVELERS by virtue of the Young Construction default and Vander Bleek/Wells surety indemnity, and/or the additional sums lost from the loan transactions and subordination of security suffered by Vander Bleek and Wells as a result of the Young Construction non-performance of the Westar contract.

WHEREFORE, the Defendant/Third-Party Plaintiffs pray:

-14-

1.      That the Court enter an order granting judgment in favor of Luke Vander Bleek and Joseph Wells against CURRAN in the sum of $2,000,000 plus costs of suit;

2.      That the Court grant such further and other relief as is fair and equitable.

COUNT III

vs.
Roger A. Colmark

NOW COME the Defendants/Third-Party Plaintiffs, JOSEPH WELLS, TERRI WELLS, LUKE D. VANDER BLEEK, and JOAN L. VANDER BLEEK, by RENO & ZAHM LLP, by Robert A. Fredrickson and Jack D. Ward, and for their Third-Party Claim against the Third-Party Defendant, ROGER A. COLMARK, state and allege as follows:

1.      That JOSEPH WELLS, TERRI WELLS, LUKE D. VANDER BLEEK, and JOAN L. VANDER BLEEK all reside within the United States District Court, Northern District of Illinois, Western Division, and are the individuals referred to as the Defendants in case number 08-CV-50008, and are the signatories on the indemnity agreement referred to in said Complaint.

2.      That the Counter-Defendant, TRAVELERS, is a company that issued the surety bond in question and is the insurance company involved in the bonding, surety on the bond, and indemnity on the bond with regard to Young Construction, and specifically the Westar project related thereto.

3.      That the Third Party Defendant, TRISSEL, is a company having its principal place of business at 228 Emerson Place, Suite 200, Davenport, Iowa 52801,

-15-

which agency was the authorized broker and agent for TRAVELERS relative to all aspects of the procurement and issuance of the TRAVELERS surety bond on the Westar/Young Construction project.

4.    That CURRAN was an agent and employee of TRISSEL and as such functioned as the contact agent and broker relative to procurement from TRAVELERS of the Young Construction surety bond, and in so doing, CURRAN was the agent for TRISSEL relative to all TRAVELERS requirements, including indemnities, obtained from the Counter-Plaintiffs as part of the surety bonding transaction involving Young Construction on the Westar project.

5.    That the Third Party Defendant, COLMARK, is a private certified public accountant performing accounting services in the City of Sterling, State of Illinois, and specifically with regard to Young Construction.

6.    That the Defendant, SAUK VALLEY, is a state bank having offices in Sterling, Illinois.

7.    That attached hereto as Exhibits 1 and 1A are a reviewed statement furnished by COLMARK and letter representation by COLMARK furnished to CURRAN on or about May 2, 2007.

8.    That attached hereto as Exhibits 2 and 2A is a reviewed statement and letter representation furnished by COLMARK to CURRAN on May 3 or 4, 2007.

9.    That COLMARK offered accounting opinions as to the reliability of a certain statement (second reviewed statement, Exhibit 2) reviewed by him of Young Construction which contained material errors and omissions that if disclosed would have

-16-

resulted in substantial changes of the represented net worth of Young Construction from $708,000 to a negative insolvent position.

     10.    That the second reviewed statement (Exhibit 2) falsely represented SAUK VALLEY's loan position as to Young Construction by only showing a $366,972 loan secured by inventory and receivables and a long term loan of $234,930 secured by real estate, with the Young Construction equipment, building and improvements, net of depreciation of $1,611,208 and construction project account receivables at $690,895.

     11.    That during May, 2007 as specifically described on May 23, 2007, SAUK VALLEY's loans to the Young Construction individuals and entities as set out in Exhibit 3 attached hereto and totaled in excess of $5.4 million.

     12.    That CURRAN was aware of the details of the Vander Bleek/Wells financing transaction to Young Construction as COLMARK had faxed to CURRAN with the reviewed statement a two page outline of said financing transaction.

     13.    That said second reviewed statement was specifically presented to induce the reliance of both Luke Vander Bleek and Joseph Wells to procure Young Construction loans from Luke Vander Bleek and Joseph Wells to Young Construction of $800,000, for Luke Vander Bleek and Joseph Wells to subordinate their collateral position on loans, including an additional $200,000 loaned by Luke Vander Bleek prior to the presentment of the reviewed statement and further to induce Luke Vander Bleek and Joseph Wells and their respective spouses with the knowledge of CURRAN to rely and therefore indemnify TRAVELERS relative to a certain surety bond that TRAVELERS issued on the Westar/Young Construction contract.

14.    That the representations in the second reviewed statement were false and incorrect and showed a difference in net worth and income between the first and second reviewed statement during the one day interval as follows:

| Reviewed Statement | Net worth | Net income |
|---|---|---|
| First (May 2, 2007) | ($67,285) | $338,850 |
| Second (May 4, 2007) | $708,545 | $471,621 |

15.    That the company books for the year ending December 31, 2006 of the net worth and net income of Young Construction as compared with the second reviewed statement show as follows:

|  | Net Worth: | Income: |
|---|---|---|
| Company books for December 31, 2006 | 〈 $159,377 〉 | 〈 $35,388 〉 |
| Second CPA reviewed statement, May 4, 2007 | $708,545 | $471,621 |

16.    That the misrepresentations of COLMARK and Vander Bleek and Wells's reliance thereon were a proximate cause of the financing transaction going forward and the losses sustained by Vander Bleek and Wells when Young Construction ceased operations and went out of business.

17.    That Vander Bleek and Wells were damaged in that the $1 million loaned to the company was lost, their security position in the Young Construction assets was valueless, that a claim was made against TRAVELERS on the Westar surety bond,

which TRAVELERS claims triggers a $1 million obligation by Vander Bleek and Wells under the surety indemnity agreement.

18.    That jurisdiction on the Counterclaim/Third Party Claim is based on diversity with regard to TRISSEL and based on Rule 14(a) supplemental jurisdiction inasmuch as said claims are part and parcel of the original claims asserted herein by TRAVELERS arising from the Vander Bleek/Wells financing transactions and relevant to the damages reasonably occurring as a result of the construction default by Young Construction, surety bond obligations of TRAVELERS by virtue of the default, and/or the additional sums lost from the loan transactions and subordination of security suffered by Vander Bleek and Wells as a result of the Young Construction non-performance of the Westar contract.

WHEREFORE, the Defendant/Third-Party Plaintiffs pray:

1.    That the Court enter an order granting judgment in favor of Luke Vander Bleek and Joseph Wells against COLMARK in the sum of $2,000,000 plus costs of suit;

2.    That the Court grant such further and other relief as is fair and equitable.

## COUNT IV

vs.
Sauk Valley Bank & Trust Company

NOW COME the Defendants/Third-Party Plaintiffs, JOSEPH WELLS, TERRI WELLS, LUKE D. VANDER BLEEK, and JOAN L. VANDER BLEEK, by RENO & ZAHM LLP, by Robert A. Fredrickson and Jack D. Ward, and for their Third-Party Claim against

the Third-Party Defendant, SAUK VALLEY BANK & TRUST COMPANY, state and allege as follows:

1.    That JOSEPH WELLS, TERRI WELLS, LUKE D. VANDER BLEEK, and JOAN L. VANDER BLEEK all reside within the United States District Court, Northern District of Illinois, Western Division, and are the individuals referred to as the Defendants in case number 08-CV-50008, and are the signatories on the indemnity agreement referred to in said Complaint.

2.    That the Counter-Defendant, TRAVELERS, is a company that issued the surety bond in question and is the insurance company involved in the bonding, surety on the bond, and indemnity on the bond with regard to Young Construction, and specifically the Westar project related thereto.

3.    That the Third Party Defendant, TRISSEL, is a company having its principal place of business at 228 Emerson Place, Suite 200, Davenport, Iowa 52801, which agency was the authorized broker and agent for TRAVELERS relative to all aspects of the procurement and issuance of the TRAVELERS surety bond on the Westar/Young Construction project.

4.    That CURRAN was an agent and employee of TRISSEL and as such functioned as the contact agent and broker relative to procurement from TRAVELERS of the Young Construction surety bond, and in so doing, CURRAN was the agent for TRISSEL relative to all TRAVELERS requirements, including indemnities, obtained from the Counter-Plaintiffs as part of the surety bonding transaction involving Young Construction on the Westar project.

5.     That the Third Party Defendant, COLMARK, is a private certified public accountant performing accounting services in the City of Sterling, State of Illinois, and specifically with regard to Young Construction.

6.     That the Defendant, SAUK VALLEY, is a state bank having offices in Sterling, Illinois.

7.     That attached hereto as Exhibits 1 and 1A are a reviewed statement furnished by COLMARK and letter representation by COLMARK furnished to CURRAN on or about May 2, 2007.

8.     That attached hereto as Exhibits 2 and 2A is a reviewed statement and letter representation furnished by COLMARK to CURRAN on May 3 or 4, 2007.

9.     That COLMARK offered accounting opinions as to the reliability of a certain statement (second reviewed statement, Exhibit 2) reviewed by him of Young Construction which contained material errors and omissions that if disclosed would have resulted in substantial changes of the represented net worth of Young Construction from $708,000 to a negative insolvent position.

10.     That the second reviewed statement (Exhibit 2) falsely represented SAUK VALLEY's loan position as to Young Construction by only showing a $366,972 loan secured by inventory and receivables and a long term loan of $234,930 secured by real estate, with the Young Construction equipment, building and improvements, net of depreciation of $1,611,208 and construction project account receivables at $690,895.

11.    That during May, 2007 as specifically described on May 23, 2007, SAUK VALLEY's loans to the Young Construction individuals and entities as set out in Exhibit 3 attached hereto and totaled in excess of $5 million.

12.    That the second reviewed statement, the TRAVELERS surety for the Young Construction Westar bond, the indemnity by Vander Bleek and Wells to TRAVELERS on the surety bond, the intercreditor agreement (attached hereto as Exhibit 4), the loaning of the additional $800,000 and the restructuring of the original $200,000 were all part of the financing transaction from Vander Bleek and Wells to Young Construction that occurred during May, 2007.

13.    That during late April, 2007, SAUK VALLEY agents represented to Vander Bleek that various Young Construction loans were not in default, that SAUK VALLEY was not concerned as to Young Construction's financial condition, that the Young Construction loans to SAUK VALLEY would not be called, that the covering of an overdraft operational account as to Young Construction was a routine matter (since Young Construction would switch funds to cover checks), and that Young Construction was at SAUK VALLEY's lending limit.

14.    That on or about May 6, 2007 the second reviewed statement (herein identified as reviewed Exhibit 2) was delivered to SAUK VALLEY. Between May 6, 2007 and May 14, 2007, while SAUK VALLEY knew that the second reviewed statement (SAUK VALLEY was not aware there had been a reviewed statement number one) falsely represented SAUK VALLEY's loan position as to Young Construction, negotiated and entered into a certain intercreditor agreement (Exhibit 5) with Vander bleek and

Wells to facilitate the financing transaction which resulted in Vander Bleek and Wells: loaning $800,000 to Young Construction; agreeing to a first collateral position only as to the Westar project; agreeing to indemnify TRAVELERS up to $1 million relative to TRAVELERS issuance of a surety bond on the Young Construction/Westar project; and to restructure the payor and security position as to the $200,000 that had been loaned by Vander Bleek to Young Construction in April of 2007.

15.    That SAUK VALLEY further knew that in addition to the amount of its loan and the extent of its collateral position being misrepresented by the second reviewed statement, that various trade receivables were less than project costs on certain Young Construction non-Westar jobs and that the Young Construction assets were overstated.

16.    That SAUK VALLEY knew that Vander Bleek and Wells relied on the reviewed statement number 2 and relied on the statements concerning the SAUK VALLEY loan status in entering into the financing transaction with Young Construction, negotiating the Vander Bleek and Wells position relative to the intercreditor agreement, restructuring of the $200,000 previously loaned, and entering into the surety agreement with TRAVELERS.

17.    That SAUK VALLEY collected on its loan obligations from Young Construction the following sums:  during the summer of 2007 the sum of $409,000; during September, 2007 the sum of $136,000; and during November/early December, 2007 by appropriation $112,000 for total payments received of $657,000.  SAUK VALLEY further obtained a claimed assignment and/or claimed secured first position as to a certain Nebraska lawsuit, the attorneys' fees of which SAUK VALLEY refused to finance and which were therefore financed in part by Vander Bleek and Wells.

18.    That the misrepresentations of SAUK VALLEY and Vander Bleek and Wells reliance thereon were a proximate cause of the financing transaction going forward and the losses sustained by Vander Bleek and Wells when Young Construction ceased operations and went out of business.

19.    That Vander Bleek and Wells were damaged in that the $1 million loaned to the company was lost, their security position in the Young Construction assets was valueless, that a claim was made against TRAVELERS on the Westar surety bond, which TRAVELERS claims triggers a $1 million obligation by Vander Bleek and Wells under the surety indemnity agreement.

20.    That jurisdiction on the Counterclaim/Third Party Claim is based on diversity with regard to TRISSEL and based on Rule 14(a) supplemental jurisdiction as to CURRAN, COLMARK, and SAUK VALLEY inasmuch as said claims are part and parcel and arise out of the same factual nexus of the original claims asserted herein by TRAVELERS arising from the Vander Bleek/Wells financing transactions. The damages claimed herein reasonably occur as a result of the construction default by Young Construction, surety bond obligations of TRAVELERS by virtue of the Young Construction default and Vander Bleek/Wells surety indemnity, and/or the additional sums lost from the loan transactions and subordination of security suffered by Vander Bleek and Wells as a result of the Young Construction non-performance of the Westar contract.

WHEREFORE, the Defendant/Counter-Plaintiffs pray:

1.     That the Court enter an order granting judgment in favor of Wells and Vander Bleek against SAUK VALLEY, a state banking corporation, for damages of $2,000,000 plus costs of suit;

2.     That the Court grant such further and other relief as is fair and equitable.


Dated this _____ day of July, 2008.


                              JOSEPH  WELLS;  TERRI  WELLS;
                              LUKE D. VANDER BLEEK; and JOAN
                              L. VANDER BLEEK

                              By:    RENO & ZAHM LLP


                              By: _____
                                   Robert A. Fredrickson


                    COUNTER-PLAINTIFFS
                    DEMAND TRIAL BY JURY




RENO & ZAHM LLP
BY:    ROBERT A. FREDRICKSON, #00868469
       JACK D. WARD, #3125783
       MICHAEL J. SCHIRGER, #6290691
2902 McFarland Road
Perry Creek Plaza, Suite 400
Rockford, IL 61107
(815) 987-4050

# *Roger A. Colmark*

### CERTIFIED PUBLIC ACCOUNTANT
210 E. 3RD ST. • STERLING, ILINOIS 61081

Ph: 815-626-8600
800-982-3192
Fax: 815-626-9268
e-mail: colmark@essex1.com

## Independent Accountant's Report

To the Partners
Young Construction & Paving, L.L.C.
Sterling, Illinois

We have reviewed the accompanying balance sheet of Young Construction and Paving, L.L.C., as of December 31, 2006, and the related statements of income, partners' equity, and cash flows for the year then ended, in accordance with standards established by the American Institute of Certified Public Accountants. All information included in these financial statements is the representation of the owners of Young Construction and Paving, L.L.C.

A review consists principally of inquiries of company personnel and analytical procedures applied to financial data. It is substantially less in scope than an audit in accordance with generally accepted auditing standards, the objective of which is the expression of an opinion regarding the financial statements taken as a whole. Accordingly, we do not express such an opinion.

Based on our review, we are not aware of any material modifications that should be made to the accompanying financial statements in order for them to be in conformity with generally accepted accounting principles.

*Roger A. Colmark, CPA*

Sterling, Illinois
May 2, 2007

EXHIBIT

1A

12:07 PM
May 2, 2007
Accrual Basis

# Young Construction & Paving, LLC
## Balance Sheet
### As of December 31, 2006

| | Dec 31, 06 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| **1000 · SVB Checking** | |
| 1006 · WV Line of Credit | (425.81) |
| 1007 · AFF Line of Credit | (908.89) |
| 1000 · SVB Checking - Other | (135,745.08) |
| **Total 1000 · SVB Checking** | (137,079.58) |
| 1005 · Wells Fargo - Iowa | 510.00 |
| 1020 · Petty Cash | 500.00 |
| **Total Checking/Savings** | (136,069.58) |
| **Accounts Receivable** | |
| **1120 · Construction Receivables** | |
| 1120025 · Sinclair OSBL | |
| 1120027 · Sulphur Reduction Unit | 80,602.57 |
| 1120032 · Sinclair CCR/CRU | 26,047.88 |
| 1120039 · Mohawk Field Services | 105,146.43 |
| **1120043 · AFF Site Concrete Flatwork** | 300.02 |
| AFF 009 · AFF Retaining Wall | 800.00 |
| AFF 012 · Grout Base of Columns | 25,869.45 |
| AFF 013 · Paving @ South Utilities | 22,302.63 |
| 1120043 · AFF Site Concrete Flatwork - Other | 378,793.89 |
| **Total 1120043 · AFF Site Concrete Flatwork** | 427,759.97 |
| **1120044 · AFF Site Concrete & Foundations** | |
| AFF 010 · Replace Damaged Anchor Bolts | 55.55 |
| **Total 1120044 · AFF Site Concrete & Foundations** | 55.55 |
| 1120046 · Sinclair Oil Recycle Compressor | 28,170.67 |
| 1120050 · Petrak Mechanical | 6,045.24 |
| 1120053 · Polk Mechanical | 16,757.57 |
| **Total 1120 · Construction Receivables** | 690,885.90 |
| **1125 · Retainage Receivable** | |
| 1125032 · Retainage - Sinclair CCR/CRU | 43,049.62 |
| 1125034 · Retainage - AFF Concrete Demo | 15,171.02 |
| **1125043 · Retainage - AFF Cncrete Fltwork** | |
| AFF012 · Grout Base of Columns | 1,375.71 |
| AFF013 · Paving @ South Utilities | 2,478.07 |
| 1125043 · Retainage - AFF Cncrete Fltwork - Other | 105,037.12 |
| **Total 1125043 · Retainage - AFF Cncrete Fltwork** | 108,890.90 |
| **1125044 · Retainage - AFF Concrete & Fndt** | |
| AFF010 · Replace Damaged Anchor Bolts | 1,055.45 |
| 1125044 · Retainage - AFF Concrete & Fndt - Other | 224,570.63 |
| **Total 1125044 · Retainage - AFF Concrete & Fndt** | 225,626.08 |
| 1125048 · Retainage - C5 CCH | 67,727.50 |
| **Total 1125 · Retainage Receivable** | 460,465.12 |
| **1190 · Other Receivables** | |
| 1195039 · Dan Long Advance 1/31/06 #5033 | 359.96 |
| **Total 1190 · Other Receivables** | 359.96 |
| **1216 · Employee Account Receivables** | |
| 1216048 · Brodie Hayward | |
| 1216351 · Mat Sowers | 870.00 |
| 1216465 · Dan Long CCR | 3,000.00 |
| 1216471 · Dan Long 5/31/06 Advance | 87.95 |
| 1216600 · M.Ward Advance for 12/25/6 YG | 8.22 |
| | 500.00 |
| **Total 1216 · Employee Account Receivables** | 4,466.17 |
| **Total Accounts Receivable** | 1,156,177.15 |

EXHIBIT

12:07 PM
May 2, 2007
Accrual Basis

# Young Construction & Paving, LLC
## Balance Sheet
### As of December 31, 2006

|  | Dec 31, 06 |
|---|---|
| **Other Current Assets** |  |
| 1240 · Receivables Clearing | 17,738.26 |
| 1260 · Employee Notes Receivable |  |
| 126010 · Randy DeBoer | 4,964.86 |
| 1260111 · Kurt Kramer | 1,056.50 |
| 126015 · Lori Carbaugh Advance | 2,000.00 |
| 12605 · Daryl Patterson | 440.00 |
| **Total 1260 · Employee Notes Receivable** | 8,461.36 |
| 1270 · Refundable Deposits |  |
| 1270385 · Murray Company | 100.00 |
| 1270544 · Delich, Roth, & Goodwillie | 200.00 |
| 1274211 · CNH Capital | 3,000.00 |
| **Total 1270 · Refundable Deposits** | 3,300.00 |
| 1280 · Utility Deposits |  |
| 1280010 · Nicor |  |
| 1280011 · Com Ed Deposit on Acct# 7014 | 790.00 |
| 1280012 · UPS 4E4E48 Deposit | 290.00 |
| 800.00 |  |
| **Total 1280 · Utility Deposits** | 1,880.00 |
| **Total Other Current Assets** | 31,379.64 |
| **Total Current Assets** | 1,051,487.21 |
| **Fixed Assets** |  |
| 18012· · Heavy Construction Equipment |  |
| 18014· · Tools and Forms | 718,245.62 |
| 18015· · Trucks and Vechiles | 369,205.25 |
| 18016· · Office and Computer Equipment | 375,914.05 |
| 18017· · Life Safety Equipment | 31,455.49 |
| 1990 · Buildings | 31,586.25 |
| 1999 · ACCUMULATED DECPRECIATION | 521,139.54 |
|  | (436,339.34) |
| **Total Fixed Assets** | 1,611,206.86 |
| **TOTAL ASSETS** | 2,662,694.07 |
| **LIABILITIES & EQUITY** |  |
| **Liabilities** |  |
| **Current Liabilities** |  |
| **Accounts Payable** |  |
| 2000 · Accounts Payable | 954,042.75 |
| 2001 · Subcontract Agreements | 118,667.28 |
| **Total Accounts Payable** | 1,072,710.03 |
| **Other Current Liabilities** |  |
| 2060 · Sauk Valley Bank Line of Credit |  |
| 2060002 · AFF Flatwork - SVB - 100257292 | 366,972.56 |
| **Total 2060 · Sauk Valley Bank Line of Credit** | 366,972.56 |
| 2100 · Payroll Liabilities |  |
| 21001 · Illinois State Income Tax | 142.26 |
| 21002 · Illinois State Unemployment Tax | 625.63 |
| 21003 · Federal Unemployment Tax | 635.88 |
| 21004 · Federal Income Tax W/H | 3,976.00 |
| 21005 · Employee Medicare Payments | 627.73 |
| 21006 · Employer Medicare Payments | 627.73 |
| 21007 · Employee Social Security | 2,684.23 |
| 21008 · Employer Social Security | 2,684.23 |
| 21009 · Texas State Unemployment Tax | 492.38 |
| 21010 · Oklahoma State Income Tax | 577.00 |
| 21011 · Oklahoma State Unemployment Tax | 296.21 |
| 21015 · AFLAC POST | 40.40 |
| 21017 · West Virginia State Income Tax | 2,178.00 |
| 21018 · West Virginia Unemployment Tax | 8,148.14 |

12:07 PM
May 2, 2007
Accrual Basis

# Young Construction & Paving, LLC
## Balance Sheet
### As of December 31, 2006

| | Dec 31, 06 |
|---|---|
| 21019 · Montana State Income Tax | 159.00 |
| 21021 · New Mexico State W/H | 112.20 |
| **Total 2100 · Payroll Liabilities** | 24,209.02 |
| 2101 · Union Benefits Payable | 457.19 |
| 2111·· Accrued Interest | 48,445.21 |
| 2115·· Accrued Real Estate Taxes | 10,000.00 |
| 2200 · Current Equipment Liability | |
| 2211 · Huntington Nat'l Bank 2361.01 | 13,070.75 |
| 2214 · Marshall Equipmen (3) Mats 39" | 29,600.00 |
| 2220 · METROBANK | 12,910.87 |
| 2221 · 07/24 Loan - Paul & Bev Young | 30,000.00 |
| 2222 · 07/28 Loan - Paul & Bev Young | 200,000.00 |
| 2223 · 08/11 Loan - Paul & Bev Young | 200,000.00 |
| **Total 2200 · Current Equipment Liability** | 485,581.62 |
| 2300 · Contingent Current Liabilities | |
| 23006 · C.P. Electric Project 1732 | 230.00 |
| **Total 2300 · Contingent Current Liabilities** | 230.00 |
| **Total Other Current Liabilities** | 933,895.60 |
| **Total Current Liabilities** | 2,006,605.63 |
| Long Term Liabilities | |
| 2600 · Long - Term Equipment Liability | |
| 2600001 · Caterpillar Financial | 21,015.65 |
| 2600002 · Paul C Young | 157,900.00 |
| 2600004 · Citicapital Loan Dated 6/7/05 | 134,138.20 |
| 2600017 · Ford Credit | 6,459.17 |
| 2600061 · 201008881 - SVB Loan (Emerson) | 234,930.45 |
| **Total 2600 · Long - Term Equipment Liability** | 554,443.47 |
| 2600021 · Citi Corp 9/17/05 | 68,929.69 |
| 2600022 · Note Payable Paul Young 10/14 | 100,000.00 |
| **Total Long Term Liabilities** | 723,373.16 |
| **Total Liabilities** | 2,729,978.79 |
| Equity | |
| 3000 · Jeff Young - Capital | 106,219.33 |
| 3100 · Gordon Young - Capital | 106,219.33 |
| 3500 · Jeff Young - Drawing | (9,188.53) |
| 3507·· Skatetime School Program | 74.97 |
| 3506·· Net Transfers( to) or from Co. | (578,573.40) |
| 3600 · Gordon Young - Drawing | (30,886.83) |
| Net Income | 338,850.41 |
| **Total Equity** | (67,284.72) |
| **TOTAL LIABILITIES & EQUITY** | 2,662,694.07 |

12:08 PM
May 2, 2007
Accrual Basis

# Young Construction & Paving, LLC
## Profit & Loss
### January through December 2006

|  | Jan - Dec 06 |
|---|---|
| **Ordinary Income/Expense** |  |
| **Income** |  |
| **4000 · Construction** |  |
| 4004012 · Lake Regional Hospital |  |
| 4005019 · Sauk Valley Community College | 0.00 |
| 4005025 · Sinclair OSBL | 0.00 |
| 4005027 · SRU Sulphur Reduction Unit | 597,944.12 |
| 4005030 · Sinclair NHDS - Start Up | 81,739.24 |
| 4005032 · Sinclair CCR/CRU | 16,377.98 |
| 4005033 · Naval Library Center | 1,346,229.38 |
| 4005034 · AFF Concrete Demolition | 250,074.07 |
| 4005036 · Republic Construction | 284,947.34 |
| 4005037 · PCE Constructors | 7,829.61 |
| 4005038 · Cylx Engineering | 1,574.10 |
| 4005039 · Mohawk Field Services | 11,992.71 |
| 4006043 · AFF Site Concrete Flatwork | 7,105.52 |
| FWA 012 · Grout Base of Columns | 0.00 |
| FWA 013 · Paving @ South Utilities | 0.00 |
| 4006043 · AFF Site Concrete Flatwork - Other | 1,055,619.71 |
| **Total 4006043 · AFF Site Concrete Flatwork** | 1,055,619.71 |
| 4006044 · AFF Site Concrete & Foundations | 2,313,706.15 |
| 4006045 · Sinclair Oil Service Contract | 23,224.15 |
| 4006048 · Sinclair Oil Recycle Compressor | 28,170.67 |
| 4006048 · C5 Corrosion Control Hanger | 677,275.00 |
| 4006050 · Petrek Mechanical | 6,045.24 |
| 4006053 · Polk Mechanical | 16,757.57 |
| **Total 4000 · Construction** | 6,726,912.56 |
| 4200 · Reimbursed Expenses | 0.00 |
| 4201 · Markup & Misc. Additions | 47.16 |
| **Total Income** | 6,726,959.72 |
| **Expense** |  |
| 5001 · Material Expense |  |
| 5003 · Equipment Expense | 0.00 |
| 50032 · Equipment |  |
| 50033 · Equipment Rental Expense | 165.00 |
| 5003 · Equipment Expense - Other | 0.00 |
| **Total 5003 · Equipment Expense** | 165.00 |
| 5021 · Loan Interest Expense |  |
| 5021287 · SVB 100257287 Interest | 0.00 |
| 5021291 · SVB - Loan 100257291 Interest | 950.02 |
| 5021 · Loan Interest Expense - Other | 61,987.76 |
| **Total 5021 · Loan Interest Expense** | 62,937.78 |
| 5022 · Late Fees | 40.22 |
| 5023 · Bank Charges | 48.52 |
| 5034 · Reimbursable Expenses | 11,589.23 |
| 5035 · Administrative Expense - Other | 0.00 |
| 5045 · Lease Interest Expense | 0.00 |
| 5100 · Material | 1,654,230.49 |
| 5125 · Labor | 2,343,153.91 |
| 5150 · Equipment | 530,294.11 |
| 5175 · Subcontract Expense | 1,337,476.17 |
| 5200 · Insurance | 3,300.74 |
| 5225 · Utilities | 703.16 |
| 5275 · Advertising | 229.13 |
| 5300 · Professional Services | 8,776.00 |
| 5306 · Real Estate Taxes | 0.00 |
| 5325 · Office Supplies Expense Account | 26.22 |
| 5350 · Shop Supplies Expense Account | 0.00 |
| 5375 · Safety Expense Account | 835.00 |
| 5425 · Uncollectible Accounts Expense | 0.00 |
| 5510 · Depreciation Expense | 224,426.84 |

12:08 PM
May 2, 2007
Accrual Basis

# Young Construction & Paving, LLC
## Profit & Loss
### January through December 2006

|  | Jan - Dec 06 |
|---|---|
| 5525 · Overhead Expense Account | |
| 6560 · Payroll Expenses | 194,519.52 |
|  | 747.70 |
| **Total Expense** | 6,371,500.76 |
| **Net Ordinary Income** | 355,458.96 |
| Other Income/Expense | |
| Other Income | |
| 7000 · Other Income | |
| 7004 · Misc Other Income | |
| 70041 · Gain on Sale of Equipment | 0.00 |
| 7004 · Misc Other Income – Other | 1.00 |
| Total 7004 · Misc Other Income | 1.00 |
| Total 7000 · Other Income | 1.00 |
| Total Other Income | 1.00 |
| Other Expense | |
| 8000 · Other Expense | |
| 8001 · Other Lease Expenses | |
| 80010 · Lease Fees | 0.00 |
| 80011 · Lease Late Fee Expenses | 0.00 |
| 80013 · Lease Interest Expenses | 0.00 |
| 80014 · Repossession Fees | 0.00 |
| Total 8001 · Other Lease Expenses | 0.00 |
| 8002 · Loss on Sale of Fixed Assets | 16,609.54 |
| 8010 · Other Expenses | 0.01 |
| Total 8000 · Other Expense | 16,609.55 |
| **Total Other Expense** | 16,609.55 |
| **Net Other Income** | (16,609.55) |
| **Net Income** | 338,850.41 |

## Roger A. Colmark

**CERTIFIED PUBLIC ACCOUNTANT**
210 E. 3RD ST. • STERLING, ILLINOIS 61081

Ph: 815-626-8600
800-982-3192
Fax: 815-626-9268
e-mail: colmark@essex1.com

### Independent Accountant's Report

To the Partners
Young Construction & Paving, L.L.C.
Sterling, Illinois

We have reviewed the accompanying balance sheet of Young Construction and Paving, L.L.C., as of December 31, 2006, and the related statements of income, partners' equity, and cash flows for the year then ended, in accordance with standards established by the American Institute of Certified Public Accountants. All information included in these financial statements is the representation of the owners of Young Construction and Paving, L.L.C.

A review consists principally of inquiries of company personnel and analytical procedures applied to financial data. It is substantially less in scope than an audit in accordance with generally accepted auditing standards, the objective of which is the expression of an opinion regarding the financial statements taken as a whole. Accordingly, we do not express such an opinion.

Based on our review, we are not aware of any material modifications that should be made to the accompanying financial statements in order for them to be in conformity with generally accepted accounting principles.

*Roger A. Colmark, CPA*

Sterling, Illinois
May 2, 2007

**EXHIBIT 2A**

Young Construction & Paving, L.L.C.
Balance Sheet
December 31, 2006 and 2005

Statement 1

### Assets

| | | 2006 | | 2005 |
|---|---|---|---|---|
| **Current Assets** | | | | |
| Cash on hand and in bank | $ | 0.00 | $ | (3,262.59) |
| Accounts receivable (Note 2) | | 690,885.90 | | 1,468,353.03 |
| Note receivable - employee | | 13,287.49 | | 16,326.70 |
| Retainage | | 460,465.12 | | 152,599.11 |
| Excess profit over cost on contracts in progress | | 53,225.00 | | 0.00 |
| Advances and deposits | | 5,180.00 | | 3,300.00 |
| **Total Current Assets** | $ | 1,223,043.51 | $ | 1,637,317.25 |
| **Capital Assets** | | | | |
| Land, Buildings & Equipment (Note 3) | | 1,611,206.86 | | 1,344,689.45 |
| **Total Assets** | $ | 2,834,250.37 | $ | 2,982,006.70 |

### Liabilities and Partners' Equity

| | | | | |
|---|---|---|---|---|
| **Current Liabilities** | | | | |
| Accounts payable | $ | 1,191,041.33 | $ | 1,393,229.97 |
| Accrued expenses | | 53,096.21 | | 47,023.60 |
| Note payable, current portion (Note 4) | | 465,401.31 | | 762,574.03 |
| **Total Current Liabilities** | $ | 1,709,538.85 | $ | 2,202,827.60 |
| **Long-term Liabilities** | | | | |
| Note payable, long-term portion (Note 4) | | 416,166.86 | | 566,739.44 |
| **Total liabilities** | $ | 2,125,705.71 | $ | 2,769,567.04 |
| **Partners' Equity** | | | | |
| Partner's capital – Jeff Young | $ | 326,023.89 | $ | 67,122.24 |
| Partner's capital – Gordon Young | | 382,520.77 | | 145,317.42 |
| **Total partners' equity** | $ | 708,544.66 | $ | 212,439.66 |
| **Total Liabilities and Capital** | $ | 2,834,250.37 | $ | 2,982,006.70 |

See Accountants' Review Report.

EXHIBIT 1B

5/20/08

Fisher Court Reporting



EXHIBIT

2

Statement 2

Young Construction & Paving, L.L.C.
Statement of Partners' Equity
For the Year Ended December 31, 2006 and 2005

|  | 2006 | 2005 |
|---|---|---|
| Partners' Equity, January 1. | $ 212,439.66 | $ 908,058 60 |
| Net Income (Loss) (Statement 3) | 426,779.79 | (445,214.40) |
| Additions and (distributions) | 69,326.21 | (250,404.54) |
| Partners' Equity, December 31, (Statement 1) | $ 708,544.66 | $ 212,439.66 |

See Accountants' Review Report.



EXHIBIT
5 20 08
Fisher Court Reporting

Statement 3

**Young Construction & Paving, L.L.C.**
**Statement of Income**
**For the Year Ended December 31, 2006 and 2005**

| | | 2006 | | 2005 |
|---|---|---|---|---|
| Sales | $ | 6,780,184.72 | $ | 5,962,079.53 |
| Cost of Sales (Schedule A) | | 6,059,839.20 | | 5,656,623.99 |
| Gross Profit | $ | 720,345.52 | $ | 305,455.54 |
| **Operating Expenses** | | | | |
| Advertising | $ | 229.13 | $ | 1,255.52 |
| Administrative expense | | 0.00 | | 4,118.21 |
| Bad debts | | 0.00 | | 100,000.00 |
| Bank Charges | | 49.52 | | 4,613.74 |
| Depreciation | | 224,426.84 | | 147,987.83 |
| Freight and delivery | | 0.00 | | 5,037.77 |
| Insurance | | 3,300.74 | | 0.00 |
| Miscellaneous | | 0.00 | | 321.12 |
| Office expense | | 28.22 | | 13,673.16 |
| Other fees | | 40.22 | | 0.00 |
| Professional fees | | 6,776.00 | | 23,544.18 |
| Repairs and maintenance | | 0.00 | | 10,921.64 |
| Supplies | | 12,424.23 | | 3,365.42 |
| Telephone | | 0.00 | | 17,642.98 |
| Travel and entertainment | | 0.00 | | 8,262.70 |
| Utilities | | 703.18 | | 16,452.37 |
| Wages | | 747.70 | | 297,334.54 |
| Total Operating Expense | $ | 248,723.78 | $ | 654,531.18 |
| Income (Loss) from Operations | $ | 471,621.74 | $ | (349,075.64) |
| **Other Income and (Expenses)** | | | | |
| Gain (Loss) on sale | $ | (16,609.55) | $ | 0.00 |
| Interest income | | 0.00 | | 1,000.00 |
| Other income | | 1.00 | | 4,314.73 |
| Interest expense | | (28,233.40) | | (101,453.49) |
| Total other income and expenses | $ | (44,841.95) | $ | (96,138.76) |
| Net Income (Loss) (Statement 2) | $ | 426,779.79 | $ | (445,214.40) |

See Accountants' Review Report.

3 /21/08    EXHIBIT /D
Fisher Court Reporting    Ad



Statement 4

Young Construction & Paving, L.L.C.
Statement of Cash Flows
For the Year Ended December 31, 2006 and 2005

|  | 2006 | 2005 |
|---|---|---|
| **Cash flows from operating activities:** | | |
| Net Income (Loss) | $      426,779.79 | $      (445,214.40) |
| Adjustments to reconcile net income to net cash provided by operating activities: | | |
| Depreciation | $      224,426.84 | $      147,987.83 |
| Loss on sale of equipment | 16,609.55 | 0.00 |
| (Increase) decrease in accounts receivable | 777,467.13 | 1,186,118.07 |
| (Increase) decrease on estimated gross profit | (53,225.00) | 0.00 |
| (Increase) decrease in note receivable | 3,041.21 | 5,865.93 |
| (Increase) decrease in retainage | (307,867.01) | (152,598.11) |
| (Increase) decrease in advances & deposits | (1,880.00) | 1,305.44 |
| Increase (decrease) in accounts payable | (202,188.64) | 339,778.38 |
| Increase (decrease) in accrued expenses | 6,072.61 | (23,909.58) |
| Total Adjustments | $      462,456.69 | $      1,504,547.96 |
| Net cash provided by operations | $      889,236.48 | $      1,059,333.56 |
| **Cash flows from investing activities:** | | |
| Proceeds from sale of equipment | 47,394.01 | 0.00 |
| Purchase of property, plant & equipment | (554,947.81) | (864,845.38) |
| Partners additions and (disbursements) | 69,325.21 | (250,404.54) |
| **Cash flows from financing activities:** | | |
| Increase (decrease) in notes | (447,745.30) | 142,379.49 |
| Net decrease in cash | $      3,262.59 | $      86,663.13 |
| Cash at beginning of year | (3,262.59) | (89,925.72) |
| Cash at end of year (Statement 1) | $      (0.00) | $      (3,262.59) |

See Accountants' Review Report.

5 /20/08      EXHIBIT  /E
Fisher Court Reporting      AO



Young Construction & Paving, L.L.C.
Schedule of Cost of Sales
For the Year Ended December 31, 2006 and 2005

Schedule A

| | | 2006 | | 2005 |
|---|---|---|---|---|
| **Cost of Sales** | | | | |
| Building supplies | $ | 1,654,230.49 | $ | 2,629,899.84 |
| Equipment Rent | | 530,459.11 | | 301,001.78 |
| Insurance | | 0.00 | | 246,204.01 |
| Contract Labor | | 1,337,476.17 | | 1,243,083.12 |
| Overhead Expense | | 194,519.52 | | 0.00 |
| Repairs and Maintenance | | 0.00 | | 36,322.24 |
| Supplies | | 0.00 | | 5,328.57 |
| Wages | | 2,343,153.91 | | 1,194,784.43 |
| Total cost of sales (Statement 3) | $ | 6,059,839.20 | $ | 5,656,623.99 |

See Accountants' Review Report.



EXHIBIT 1F
5/21/08
10
Fisher Court Reporting

Young Construction & Paving, L.L.C.
Notes to Financial Statements
<u>For Year Ended December 31, 2006</u>

Note 1  Summary of Significant Accounting Policies

*Nature of Operations.*
Young Construction & Paving, LLC is engaged in the construction of buildings.

*Basis of Financial Statement Presentation.*
The company prepares its financial statements on the accrual basis
of accounting

*Inventories.*
Inventories are valued at the lower of cost or market. Cost is generally
determined on a first-in first-out basis.

*Property, Plant, and Equipment.*
Property, plant and equipment are recorded at cost less depreciation and
amortization. Depreciation and amortization are primarily accounted for on the
straight-line method based on estimated useful lives. Betterments and large
renewals which extend the life of the asset are capitalized whereas maintenance
and repairs and small renewals are expensed as incurred.

*Income Taxes.*
This company operates as a limited liability company (LLC) and therefore all
state and federal income taxes are paid by the shareholder on their personal return.

*Estimates.*
The preparation of financial statements in conformity with generally accepted
accounting principles requires management to make estimates and assumptions
that affect the reported amounts of assets and liabilities and disclosure of
contingent assets and liabilities at the date of the financial statements and the
reported amounts and expenses during the reporting period. Actual results could
differ from those estimates.

Note 2: Accounts Receivable

Accounts receivable is comprised of the following:

Construction Projects                                    $        690,885.90

Credit is extended to customers only after an evaluation of the customer's
financial condition and generally, collateral is not required.

EXHIBIT 16
5 20 08
Fisher Court Reporting

Young Construction & Paving, LLC.
Notes to Consolidated Financial Statements
For Year Ended December 31, 2006

Note 3:  Property, Plant, and Equipment

Property, plant and equipment is comprised of the following:

| | | |
|---|---|---:|
| Building & Improvements | $ | 521,139.54 |
| Equipment | | 1,526,406.66 |
| Total | $ | 2,047,546.20 |
| Less: Accumulated Depreciation | | (436,339.34) |
| Net property, plant & equipment | $ | 1,611,206.86 |

Note 4:  Notes Payable

Notes payable consists of the following:

| | Current | Long Term | Total |
|---|---:|---:|---:|
| **Sauk Valley Bank** Interest only payments at 8%. Loan matures 6/20/06. Loan is secured by inventory and accounts receivable. | $ 366,972.56  $ | 0.00  $ | 366,972.56 |
| **Caterpillar Financial** Monthly payments are $960.38 at 2.86%. Loan is secured by Cat Skid Loader | 11,163.00 | 9,852.85 | 21,015.85 |
| **Huntington Nat'l Bank** | 13,070.75 | 0.00 | 13,070.75 |
| **Citicapital** Monthly payments are $2,689.65 at 8.58% interest.  Loan matures 6/7/08.  Loan is secured with excavator and drum roller | 20,756.00 | 113,382.20 | 134,138.20 |
| **Sauk Valley Bank** Monthly payments are $2,240.19 at 7.5% interest.  Loan matures 6/7/11.  Loan is secured with real estate and building in Emerson | 9,262.00 | 225,668.45 | 234,930.45 |
| **Marshall Equipment** Purchase of three dump trailers. | 9,000.00 | 20,600.00 | 29,600.00 |
| **Metrobank** Monthly payments are $788.32 at 7.25%. Loan is secured by 1999 Peterbilt tractor. | 8,523.00 | 4,387.87 | 12,910.87 |
| **Citi Corp** Monthly payments are $2,689.65 at 8.58%. Loan is secured by roller and mack truck | 26,654.00 | 42,275.69 | 68,929.69 |
| **Total Notes Payable** | $ 465,401.31  $ | 416,166.86  $ | 881,568.17 |

EXHIBIT  /4

5-20-07

Fisher Court Reporting

Young Construction & Paving, L.L.C.
Notes to Consolidated Financial Statements
For Year Ended December 31, 2006

Note 5: Fair Values of Financial Instruments

The following methods and assumptions were used to estimate the fair value of
financial instruments:

Cash and Cash Equivalents.
The carrying amount reported in the balance sheet for cash and cash equivalents
approximates its fair value

Accounts Receivable and Accounts Payable.
The carrying amount of accounts receivable and accounts payable in the balance
sheet approximates fair value.

Short-Term and Long-Term Debt.
The carrying amount of the revolving credit facility approximates fair value.

Schedule 1a

Young Construction & Paving, LLC.
Contracts Completed
For the Year Ended December 31, 2005

| Job# | Job Name | Contract Price Final Contract | Cost of Construction | Gross Profit | Prior to December 31, 2005 Revenue Earned | Cost of Construction | Gross Profit/Loss | During the Year Ended December 31, 2005 Revenue Earned | Cost of Construction | Gross Profit/Loss | Billed | Over (Under) Billed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Completion of Prior Years Contracts** | | | | | | | | | | | | |
| 5026 | Sinclair G4 - OSBL project | $ 1,472,758 | $ 953,886 | $ 518,872 | $ 674,814 | $ 446,581 | $ 423,223 | $ 597,944 | $ 507,265 | $ 82,849 | $ 1,472,758 | $ 0 |
| 5027 | Sinclair G4 - SRU project | 634,753 | 787,328 | (102,574) | 553,514 | 523,115 | 29,899 | 81,739 | 214,211 | (132,472) | 634,753 | 0 |
| 5032 | Sinclair G4 - CCR project | 2,508,227 | 1,878,383 | 629,844 | 1,120,410 | 462,708 | 628,702 | 1,387,817 | 1,384,725 | 2,843 | 2,508,227 | 0 |
| 5033 | NAS-JRB Library project | 280,232 | 434,472 | (154,180) | 30,158 | 30,158 | 0 | 250,074 | 404,254 | (154,180) | 280,232 | 0 |
| | **Total Contracts completed from prior years** | $ 4,895,970 | 4,004,207 | 891,763 | $ 2,578,397 | $ 1,462,572 | $ 1,084,825 | $ 2,317,573 | $ 2,510,835 | $ (193,052) | $ 4,895,970 | $ 0 |
| 5034 | AFF Concrete Demo project | 303,420 | 328,626 | (25,206) | 0 | 0 | 0 | 303,420 | 328,626 | (25,206) | 303,420 | 0 |
| 6043 | AFF Concrete Foundations project | 1,982,533 | 1,513,485 | 469,048 | 0 | 0 | 0 | 1,982,533 | 1,513,485 | 469,048 | 1,982,533 | 0 |
| 6045 | Sinclair G1 Service Contract | 23,324 | 13,823 | 9,401 | 0 | 0 | 0 | 23,324 | 13,823 | 9,401 | 23,324 | 0 |
| | Other work | 50,735 | 40,250 | 10,485 | 0 | 0 | 0 | 50,735 | 40,250 | 10,485 | 50,735 | 0 |
| | **Total Contracts Awarded and Completed for fiscal year ended December 31, 2005** | $ 2,359,912 | 1,896,184 | 463,728 | $ 0 | $ 0 | $ 0 | $ 2,359,976 | $ 1,896,184 | $ 463,728 | $ 2,359,912 | $ 0 |
| | **Total Revenue and Cost of Construction (Completed during the year)** | $ 7,255,882 | 5,900,391 | 1,355,491 | $ 2,578,397 | $ 1,462,572 | $ 1,084,825 | $ 4,677,485 | $ 4,407,019 | 270,636 | $ 7,255,882 | $ 0 |

See Accountants Review Report

EXHIBIT 1J
3/29/07
Fisher Court Reporting

Schedule 1b

Young Commercial & Paving, LLC.
Contracts In Progress
For the Year Ended December 31, 2006

See Accountants Review Report

EXHIBIT _JK_

5/20/08

Fisher Court Reporting

**SAUK VALLEY BANK - LOAN PRESENTATION**

BORROWER:  Young Construction & Paving

**PREPARATION DATE: 4/25/07**

| Account # | Borrower | Orig. Bal | Bal | Type | Rate | Orig. Date | Maturity | Collateral |
|---|---|---|---|---|---|---|---|---|
| 100145386 | Jeff Young | 17,500 | 9,000 | COM-LN | 8.75% | 4/29/02 | 10/29/07 | Unsecured |
| 100145387 | Jeff Young | 25,000 | 18,000 | COM-OP | 8.75% | 7/09/02 | 7/09/07 | Unsecured |
| 100257281 | Young Construction | 254,000 | 0 | LOC | 8.25% | 11/14/02 | 11/14/07 | GSA |
| 100257292 | Young Construction | 385,000 | 385,000 | COM-OP | 8.75% | 9/22/06 | 9/22/07 | GSA |
| 100257293 | Young Construction | 60,000 | 60,000 | COM-OP | 9.75% | 04/23/07 | 6/23/07 | GSA |
| 100340880 | Northwest Acquisi | 150,000 | 124,560 | COM-LN | 8.75% | 9/19/02 | 9/09/07 | GSA |
| 100422581 | Mathew C Sowers | 25,000 | 19,805 | COM-EQUIP | 7.75% | 1/20/06 | 1/20/11 | GSA |
| 100422582 | Mathew C Sowers | 5,000 | 5,000 | COM-LN | 9.25% | 11/02/06 | Matured | GSA |
| 200313670 | Jeff Young | 108,000 | 102,160 | Balloons | 6.35% | 9/22/05 | 10/01/12 | MTG |
| 01008880* | Jeff/Gordon Young | 885,600 | 816,128 | COM-RE | 7.50% | 10/28/05 | 5/01/11 | MTG |
| 01008881* | Jeff/Gordon Young | 240,000 | 232,605 | COM-RE | 7.50% | 11/07/05 | 5/07/11 | MTG |
| 01008882* | Jeff/Gordon Young | 973,600 | 951,113 | COM-CON | 7.50% | 11/21/05 | 5/21/09 | MTG |
| 00375580 | Gordon Young | 25,000 | 5,000 | COM-LN | 7.50% | 3/05/02 | Matured | Unsecured |
| 00188882 | Skatetime School | 373,035 | 373,035 | COM-LN | 9.25% | 2/16/07 | 2/16/08 | GSA |
| | | **TOTAL** | **$5,404,057** | | | | | |



EXHIBIT 2

**SAUK VALLEY BANK - LOAN PRESENTATION**

BORROWER:  Young Construction & Paving                    PREPARATION DATE: 4/25/07

| Account # | Borrower | Orig. Bal | Bal | Type | Rate | Orig. Date | Maturity | Collateral |
|---|---|---|---|---|---|---|---|---|
| 100145386 | Jeff Young | 17,500 | 9,000 | COM-LN | 8.75% | 4/29/02 | 10/29/07 | Unsecured |
| 100145387 | Jeff Young | 25,000 | 18,000 | COM-OP | 8.75% | 7/09/02 | 7/09/07 | Unsecured |
| 100252281 | Young Construction | 400,000 | 325,551 | COM-RE | 8.50% | 7/13/02 | July07 | MTG & 2b MTG |
| 100252282 | Young Construction | 885,000 | 412,000 | COM-CON | 8.50% | 7/13/02 | July07 | MTG & 4c MTG |
| 100257281 | Young Construction | 254,000 | 0 | LOC | 8.25% | 11/14/02 | 11/14/07 | GSA |
| 100257287 | Young Construction | 800,000 | 800,000 | COM-OP | 8.75% | 7/31/02 | July07 | GSA 4a |
| 100257290 | Young Construction | 525,000 | 525,000 | COM-LN | 9.25% | 8/23/06 | 7/01/07 | GSA 4a |
| 100257291 | Young Construction | 740,000 | 740,000 | COM-OP | 8.75% | 9/27/06 | 9/27/07 | GSA 4a |
| 100257292 | Young Construction | 385,000 | 385,000 | COM-OP | 8.75% | 9/22/06 | 9/22/07 | GSA |
| 100257293 | Young Construction | 60,000 | 60,000 | COM-OP | 9.75% | 04/23/07 | 6/23/07 | GSA |
| Proposed | Young Construction | 250,000 | 250,000 | Com-LN | 9.25% | | 7/01/07 | Proposed |
| 100340880 | Northwest Acquisi | 150,000 | 124,560 | COM-LN | 8.75% | 9/19/02 | 9/09/07 | GSA |
| 100422581 | Mathew C Sowers | 25,000 | 19,805 | COM-EQUIP | 7.75% | 1/20/06 | 1/20/11 | GSA |
| 100422582 | Mathew C Sowers | 5,000 | 5,000 | COM-LN | 9.25% | 11/02/06 | Matured | GSA |
| 200313670 | Jeff Young | 108,000 | 102,160 | Balloons | 6.35% | 9/22/05 | 10/01/12 | MTG |
| 201008880* | Jeff/Gordon Young | 885,600 | 816,128 | COM-RE | 7.50% | 10/28/05 | 5/01/11 | MTG |
| 201008881* | Jeff/Gordon Young | 240,000 | 232,605 | COM-RE | 7.50% | 11/07/05 | 5/07/11 | MTG |
| 201008882* | Jeff/Gordon Young | 973,600 | 951,113 | COM-CON | 7.50% | 11/21/05 | 5/21/09 | MTG |
| 200375580 | Gordon Young | 25,000 | 5,000 | COM-LN | 7.50% | 3/05/02 | Matured | Unsecured |
| 100188882 | Skatetime School | 373,035 | 373,035 | COM-LN | 9.25% | 2/16/07 | 2/16/08 | GSA |
| | | | | | | | | |
| | | | | | | | | |
| | TOTAL | $5,404,057 | | | | | | |

EXHIBIT
3

## Luke and Joan Vander Bleek and Joe Wells Project Loan to Young Construction

Luke and Joan Vander Bleek together with Joseph Wells agree to loan Jeff and Gordon Young and Young Construction the sum of $800,000 expressively for the purpose of financing the cash flow requirements and to add security to the bonding process involved in the Jeffrey Energy Center FGD Rebuild Project funded by Westar Energy in Kansas.

The loan is a 1-year commitment to the project and will be subrogated to the reinsurance company that posts the necessary performance bonding required for the project.

Young Construction will pay 15% interest annually during the term of the loan. Additionally, Young Construction will pay to Luke and Joan Vander Bleek and Joseph Wells any cost efficiencies received in the price of the performance bond between the estimated price of $230,000 and the actual price of the bond let. Interest payment and repayment of capital will be issued at the time the bonding company releases its subrogation requirement. This will most likely occur at project completion.

During the term of the loan, Young Construction will assign all payments from Westar Energy to Luke and Joan Vander Bleek and Joseph Wells. Luke Vander Bleek will be afforded regular communication with Aaron Young, business manager of Young Construction, for the purpose of complete review of company disbursements and cash flow requirements. Owners Jeff and Gordon Young pledge their complete cooperation and full disclosure to ensure the process is accurate and timely.

Covenants:

1) Jeff and Gordon Young will sign as owners of their company and personally.

2) Jeff and Gordon Young will produce proof of a construction contract with West Star Energy to perform a commercial concrete contract for the Topeka, Kansas Power Plant valued at $6.6 million.

3) Jeff and Gordon Young will agree to limiting their personal draws on the companies they co-own to a salary schedule of $80,000 each per year payable in monthly installments.

4) The companies Gordon and Jeff Young co-own will make no loans to any party including Jeff or Gordon Young during the term of this loan.

5) No new financing and/or financial covenants will be made or entered into with any other lender without the express written permission of Joan and Luke Vander Bleek and Joseph Wells during the term of this loan.

6) Jeff and Gordon Young will not cause any of their companies to repay any paid-in capital and/or retained earnings to them during the term of this loan.

7) Financial statements, tax returns, documents, and management discussions that pertain to the business operation will be delivered within 5 business days upon the request of Luke and Joan Vander Bleek and/or Joseph Wells any time during the term of this loan.

8) Jeff and Gordon Young and Project Manager, Brody Hayward will each demonstrate current life insurance requirements naming Young Construction in the face value amount of more than $500,000 each.

9) Young Construction will produce evidence of an employment contract with Project Manager Brody Hayward for the term of the Westar Project.

There will be no penalty for prepayment.

Loan will become immediately due and payable upon the violation of any of the covenants or any failure to make the scheduled payments.

EXHIBIT 12A

Fisher Court Reporting

**EXHIBIT**
**4**

## Loan to Jeff and Gordon Young 4/20/2007

The principal amount is $200,000.00 and the term is 12 months. We will receive 2 semi-annual installments of principal and interest.

The term of the loan will begin on April 25, 2007. The first of the two payments will be made on October 25, 2007, and the second will be made on April 24, 2008. The payments will be $111, 385.54 each, for a total of $222,771.08.   The annual interest rate is 15% (simple interest @ 1.25% per month). So, payment #1 represents $15,000 interest and $96,385.54 principal. Payment #2 represents $ 7,771.08 interest and $103,614.46 principal.

Security: We will take the title to a dump truck currently valued at $50,000.00 as collateral. (I suppose we need a lien).

Covenants:

1) Jeff and Gordon Young will sign as owners of their company and personally.

2) Jeff and Gordon Young will produce proof of a construction contract with West Star Energy to perform a commercial concrete contract for the Topeka, Kansas Power Plant valued at $7.2 million.

3) Jeff and Gordon Young will agree to limiting their personal draws on the companies they co-own to a salary schedule of $80,000 each per year payable in monthly installments.

4) The companies will make no loans to Jeff or Gordon Young during the term of this loan.

5) No new financing and/or financial covenants will be made or entered into with any other lender without the express written permission of Joan and Luke Vander Bleek during the term of this loan.

6) Jeff and Gordon Young will not cause any of their companies to repay any paid-in capital to them during the term of this loan.

7) Financial statements, tax returns, documents, and management discussions that pertain to the business operation will be delivered within 5 business days upon the request of Luke and Joan Vander Bleek any time during the term of this loan.

There will be no penalty for prepayment.

Loan will become immediately due and payable upon the violation of any of the covenants or any failure to make the scheduled payments.

EXHIBIT 12B

## INTERCREDITOR AGREEMENT

This agreement is among Sauk Valley Bank & Trust Company ("Sauk"), 201 West Third Street, Sterling, Illinois 61081, and Luke and Joan VanderBleek ("VanderBleek"), and Joseph T. Wells ("Wells").

### RECITALS

a.　　Sauk has made loans and contemplates it may prospectively make loans to Young Construction & Paving, L.L.C. ("Young"), taking a security interest in all assets of Young to collateralize performance of Young's obligations under the Sauk loan documents.

b.　　VanderBleek and Wells each contemplate loaning $400,000.00, $800,000.00 in the aggregate, to Young to fund a deposit account at Sauk to be used to support a performance bond on a construction project and to fund expenses associated with that project.

c.　　Sauk, VanderBleek and Wells wish to clarify, document and prioritize their respective rights with respect to Young's deposit accounts and accounts receivable to minimize disputes over priority.

IT IS AGREED:

1.　　**DEPOSIT ACCOUNTS**

(a)　　THE PROJECT ACCOUNT – The account opened in the name of Young at Sauk funded exclusively by the $800,000.00 loaned by VanderBleek and Wells to Young shall be subject to a senior claim in favor of the insurance or surety company underwriting the performance bond for the Young project known as the Westar Energy Contract #649360 (the "Westar Project"). In the event that said account is not utilized by the performance bond company, then, to the extent that the funds in the account represent proceeds of the original $800,000.00 loan or payments received on the Westar Project, it shall be subject to a senior claim of VanderBleek and Wells and a junior security interest of Sauk . Sauk shall not set off against monies in said account except in the limited circumstance of the receipt of service of a non-wage garnishment, citation to discover assets or other judgment lien creditor claim seeking a turnover of said account. In the event of such setoff, Sauk agrees to assign its right, title and interest in its loan documents including its notes, security agreements and financing statements to VanderBleek and Wells to the extent of payment received incident to the setoff. VanderBleek shall maintain sole control over disbursements from this account.

(b)　　OTHER DEPOSIT ACCOUNTS – Sauk retains all senior priority liens and claims, including all rights to setoff against all other deposit accounts of Young.

2.　　**ACCOUNTS RECEIVABLE.** The parties agree that all checks, drafts, wire transfers, payments or rights to payment of Young, except those received which are payments for work on the Westar Project, constitute Young's "accounts" subject to Sauk's senior security interest and proceeds thereof.



EXHIBIT

5

3.    **ENTIRE AGREEMENT.**  This Intercreditor Agreement contains the entire agreement between the parties hereto regarding their respective priorities in the assets of Young and this Intercreditor Agreement supersedes and replaces all prior agreements between the parties.

4.    **ASSIGNMENT AND TRANSFER.**  Neither Sauk, VanderBleek nor Wells shall, as long as there remains indebtedness of Young to any of them, assign or transfer any of their respective claims or rights against Young to any third party unless it notifies the assignee or transferee of the existence of this Intercreditor Agreement and the assignee or transferee agrees to be bound by this Intercreditor Agreement.

5.    **PRIORITIES.**  The relative priorities between and among Sauk's, Wells' and VanderBleek's security interests in Young's assets, and the proceeds therefrom, shall be determined in accordance with this Intercreditor Agreement and without regard to the date, order or priority of the filing of any of the financing statements filed by any of the parties hereto with any public officials or offices, and without regard to the date or time when such instruments were given or indebtedness was extended.  The priorities established herein shall apply not only to the indebtedness presently outstanding and secured by such assets, but shall also include any future advances or readvances after the paydown of the indebtedness referenced herein as long as any future advances or readvances by VanderBleek or Wells are limited to monies loaned which are deposited in the performance bond deposit account and not used for any other purpose.

6.    **DEFAULT.**  Upon any occurrence of an event of default in the repayment of any of the indebtedness secured by Sauk's, VanderBleek's or Wells' collateral referred to herein, and pursuant to the provisions of this Intercreditor Agreement, each of the parties hereto shall be entitled to take any and all collection and enforcement action against its collateral.  The parties hereto shall be entitled to take whatever action against its collateral as may be permitted under its security agreements, financing statements or other instruments given to it, or pursuant to applicable law.  All proceeds from any parties' collateral that may be held, received or recovered shall be disbursed pursuant to this Intercreditor Agreement in the order and with the same priorities that apply to the collateral from which such funds were derived.

7.    **TERMINATION.**  This Intercreditor Agreement shall terminate only upon the payment in full of the indebtedness, whether now existing or hereafter incurred, secured by the assets due to each of the parties hereto.  This Intercreditor Agreement and the priorities established herein, shall cover the extension or renewal or increase of any of the existing indebtedness secured by the collateral as of the date of this agreement without the need for any further consents.

8.    **NOTICE OF DEFAULT.**  In the event of a default by Young in its obligations owing to either Sauk, VanderBleek or Wells, as the case may be, the party where default exists shall give notice of such default to the other parties.  Any notice or other communication required or permitted to be given under this Agreement shall be in writing and deemed to have been properly given when delivered in person, when delivered by nationally recognized next business day courier service (e.g. Federal Express or UPS), or three (3) days after being sent by

2

certified or registered United States mail, return receipt requested, postage prepaid, addressed in the case of mail or courier service or delivered in the case of personal delivery to the party at the address set forth next to such party's name at the top of this Agreement. Any party may change that party's address for notices in the manner set forth above.

Agreed this 17th day of May 2007.

_____
LUKE VANDERBLEEK

_____
JOAN VANDERBLEEK

_____
JOSEPH T. WELLS

SAUK VALLEY BANK & TRUST COMPANY

By _____
Its _____ Exec. V.P. _____

3