# EXHIBIT A



# AGENCY CONTRACT

Master Code: HE340

Agency Name: TRISSEL GRAHAM & TOOLE INC.

City: DAVENPORT      State: IA

Effective Date: April 1, 2005

## I. Definitions

"You" and "your" means the agency named above.

"We", "us" and "our" means St. Paul Fire and Marine Insurance Company, The Travelers Indemnity Company and their member insurance companies for which you are authorized to do business under this Contract.

"Agreement" or "Contract" means this document and any Amendments or Schedules issued as attachments.

"Policy" or "policies" means any insurance policy or surety bond. It does not include surplus lines insurance policies.

"Policyholder" means the named insured on a policy or principal on whose behalf we have provided a surety bond.

## II. General Provisions

This Contract governs the agency relationship between you and us for the business covered under this Agreement. It replaces all previous contracts or agreements, whether oral or written, between you and us for such business. Separately negotiated contracts or agreements for individual accounts or specific programs are not affected by this Contract.

1. You are authorized to act as our agent for the business(es) listed below.

   Bond.
   Commercial property-casualty (excluding National Accounts)


EXHIBIT A

G8309CPS      1

**General Provisions (Continued)**

2. You may solicit applications for policies and bind, execute and service policies and endorsements for classes of business and types of risk as we may authorize from time to time. This authorization is subject to our underwriting standards and rules. We may change those standards and rules at any time and will notify you of such changes. Unless you are granted written authority, we retain all authority to bind, execute, and endorse all new or renewal policies of any type:

   a. Written through our Bond Business segment; and

   b. Written through our Oil and Gas business segment.

   If you bind coverage, you will submit a written binder or application, or submit the policy or endorsement request through an electronic upload, to us within five business days of coverage inception. Except for premiums that we bill directly, you are authorized to collect premiums, deposits and other payments for policies and services.

3. You are not authorized to make, alter, vary or discharge any policy, to extend the time for payment of premiums, to waive or extend any policy obligation or condition, or to incur any liability on our behalf, unless we give you written authorization.

4. You are granted a revocable license to use our service marks as we may authorize from time to time. You are not authorized to place or distribute any advertisement regarding us or our products, including any email or website promotions, without our written approval. We may send sales promotion material to policyholders provided we send you an advance copy of any such material. We may also provide direct billed policyholders information of general interest, such as broader perils, available options for deductibles, loss reduction information, claim reporting information, payment options and other available coverages.

5. You acknowledge that your relationship to us is that of an independent contractor and we are not responsible for any of your expenses, fees or taxes. In no case will you be deemed to be or have the rights of an employee, joint venturer or partner with us.

6. Any of our supplies that we furnish you, including powers of attorney, will remain our property and will be returned to us when requested.

7. You will maintain the proper licenses to act on behalf of each company in which you transact business for us. You are responsible for paying all countersigning commissions to the countersigning agent.

8. You will comply with all instructions, company policies, procedures, processes and underwriting rules and guidelines that we communicate to you from time to time. You will also comply with all applicable local, state or federal laws or regulations, including, but not limited to, those relating to privacy, anti-terrorism and those prohibiting discrimination based upon race, national origin, ethnic background, creed, age, sex, disability, or any other unlawful discrimination. You will not refuse coverage or limit the amount or type of coverage on a residential property based upon its age, market value, or its location in an urban or minority neighborhood, or any factor other than as permitted by law and the underwriting standards and rules established by us and communicated to you.

9. You will retain original applications, supplemental applications and related policy documents for policies you upload electronically to us. You will retain these documents for the longer of the period of time that we specify or is required by law. You will promptly provide us with these documents upon request.

10. You will advise us if you or one of your officers, partners, principals, owners, employees or producers is, or has been, convicted of a federal or state felony crime involving dishonesty or breach of trust. This requirement applies whether or not we appointed or intend to appoint such persons. You do not have to advise us if the person with the conviction has received the appropriate state insurance regulator's specific written consent to engage or participate in the business of insurance, provided the form of the consent complies with the Federal Violent Crime Control and Law Enforcement Act of 1994 (18 U.S.C. §1033(e)(2)).

III. **Ownership of Expirations**

Except as otherwise provided for in this contract:

2

1. The use and control of your expirations, including direct billed business, your records and work product, will remain your property.
2. We will not use our records of your expirations in the marketing of any form of insurance coverage that would abridge your rights of ownership, use and control, unless you authorize us to do so.
3. We will not take any action that could be construed as moving a policy from you to another one of our agents without authorization from the policyholder, unless required to do so by law. A policyholder's statement designating another one of our agents will be binding upon you.

IV. Commissions

1. We will pay commission at rates shown on the attached Commission Schedule(s). On policy premiums that you collect, other than direct bill, you may retain commission on the amount collected.
2. We may change the Commission Schedule(s) by written notice to you. The change in the Commission Schedule(s) will apply to policies written or effective on, or after, the date specified in the notice. We will provide at least 90 days notice whenever a reduction in commission is involved. If we reduce a commission rate, we will not further reduce that commission rate for at least a twelve-month period.
3. You will refund to us commission paid on canceled policies and reductions in premium at the same rate we paid commission to you. You do not have to refund commission on collected earned premium amounts.

V. Billing

1. **Direct Bill**

For policies where we bill policyholders directly:

We will:
   a. indicate your name prominently on all releases;
   b. bill the policyholder or payor directly for all premiums due us, and we will be responsible for collection of direct billed premium following your collection of any initial premium; and
   c. pay commission in a timely manner as described in our direct bill procedures which we will furnish you upon request.

You will:
   a. collect and remit any down payments that we require for direct bill business;
   b. remit to us any premiums that you receive on direct bill business without deducting any commission;
   c. return commission paid by us on direct bill premium that we do not collect at the same rate at which commission was paid to you; and
   d. waive any right to a commission on premium due on direct bill policies once premium collection is referred to a collection agency or any collection unit of ours.

2. **Accounting and Collections - Other Than Direct Bill**

   a. By the first day of the month in which payment is due, we will provide you with a monthly statement of premiums. The monthly statement will consist of premiums for individual policies, endorsements, and premium bearing instruments that were issued and effective in the statement month prior to the closing date. It will also list items that were effective in prior months, but not previously billed.
   b. You are obligated to remit to us the amount shown on the monthly statement, whether or not you have collected all of the items included in the statement. We must *receive your payment by the 15th day* of the second month following the monthly closing date for that statement using the payment procedure mutually agreed upon. If you advance premiums on behalf of policyholders, you are doing so at your own risk.
   c. If our accounting department receives your written request to delete an item from the monthly statement by the 10th day of the month in which payment is due, we will adjust the monthly statement if we determine that the item should not have appeared on the statement.
   d. You are responsible for payment of any earned premium on policies, endorsements, or premium bearing instruments unless you return them to us for flat cancellation with satisfactory evidence that no coverage was afforded.

3

If the return premium due to flat cancellation of the policy, endorsement, or premium bearing instrument is delayed beyond the monthly statement preparation date, credit for the amount of any unearned premium will be included in the statement for the month in which the amount of unearned premium is established.

e. If a delay in the issuing of a policy, endorsement, or premium bearing instrument occurs, and we issue either a premium bearing instrument or an individual bill, you are obligated to remit premium to us. Payment from you on individual bills is due on the date specified on the bill. Premium bearing instruments will be included on the monthly statement for the month in which they are issued.

f. If you cannot collect additional premiums that are determined after policy expiration and advise our accounting department in writing of that by the 10th day of the month in which the payment is due, you are relieved of the responsibility for collecting the premium. You will have no commission interest on such additional premium.

3. **General Billing Provisions**

a. You will hold all funds you collect or receive on our behalf in a fiduciary capacity. You will not use those funds for any purpose except as we may specifically authorize. You will pay such funds to us according to the terms of this Contract. Until we receive those funds, you are responsible for their safety and bear the risk of loss. You will follow all instructions that we give with respect to the funds you hold on our behalf.

b. You will cooperate and assist us in any collection effort including the collection of premium due on policies that we refer to a collection agency or any collection unit of ours.

c. If you are in default in any financial obligation due us or any of our other property casualty insurance affiliates and subsidiaries, we may offset any funds you owe us or our affiliates and subsidiaries against any commission, profit sharing, or other payment we owe you.

d. If you have not properly paid us premiums or other indebtedness for which you are liable:

1) We may require that all policies be billed directly by us;

2) We may terminate this Contract immediately by written notice;

3) You grant us a security interest in your policy expirations, and appoint us as your attorney in fact to execute and file any form, financing statement, or other document necessary to perfect the security interest; and

4) Your policy expirations and related policyholder records become our property.

If we sell, or otherwise transfer your rights to policies, we will give you an accounting and pay you any amount we receive, net of all expenses incurred, which exceeds the premiums or indebtedness you owe us. If we do not recover enough to offset all amounts that you owe us, you are still responsible to us for any unpaid amounts.

In the exercise of our right to collect any indebtedness due us through the use and control of such expirations, we will use reasonable business judgment in selling such expirations.

We will not convert all your policies to direct bill, take a security interest, or assume ownership of your policy expirations, solely because of routine differences in accounting records.

e. We will furnish you upon request information about our procedures on premium financing, policy cancellation, direct bill, installment payments, and other collection and accounting matters.

VI. **Termination and Withdrawal of Authority**

1. You may terminate this Contract at any time by giving us advance written notice.

2. We may terminate this Contract or withdraw your authority for any business indicated in Section II.1 (for purposes of this Section VI "withdrawal of authority"), as follows:

a. If you are in compliance with all of your obligations to us, and all applicable statutes and regulations, by giving you 90

4

days advance written notice of the contract termination or withdrawal of authority.

Provided you are in compliance with all of your obligations to us, and all applicable law and regulations, at your written request, we will renew for one additional annual term, any policies expiring within a twelve-month period following the notice date of our termination or withdrawal of authority. Your request must be received by us within 30 days of our giving you notice of termination or withdrawal of authority. We will pay commission at the rate in effect at the time of notice of termination or withdrawal of authority. We will only renew policies meeting our underwriting standards in place at the time of renewal.

b. If you are *not* in compliance with all of your obligations to us, or all applicable law and regulations, immediately by giving written notice to you.

c. Immediately without notice to you, if:

   1) Your license to engage in the business of insurance is suspended or revoked by any regulatory authority; or

   2) You abandon your business. If you abandon your business, your expirations become our property.

3. Effective upon notice of contract termination by either you or us, you may not accept applications for policies or bind any new or renewal policies on our behalf without our prior approval. Unless we give you other instructions, you may only bind policy endorsements or amendments that do not change the hazard that is insured or the amount of insurance. These same restrictions apply to the applicable type of business as soon as we give you notice of withdrawal of authority.

4. After the effective date of termination or withdrawal of authority, the terms and conditions of this Contract continue to apply to post-termination policy transactions, except that we have the right to change the accounting and collection method used. We will send written notice to you of any such change.

5. Except for policies renewed at your request during the twelve-month renewal option period in subparagraph VI. 2.a. above, if we are required to renew any policy after contract termination or withdrawal of authority,

   a. We will renew the policy through you only if an insurance statute or regulation requires us to do so.

   b. We will not pay you commission unless an insurance statute or regulation requires us to do so, whether or not the policy is renewed through you.

   c. If we are required by an insurance statute or regulation to pay you commission and we are not prohibited by law, we may reduce the commission rate upon giving you written notice.

6. We will furnish you a record of policyholders and expiration dates if you request it from us and have paid all balances due us.

7. In the event of contract termination or withdrawal of authority, we will provide appropriate notice to the affected policyholders of our intent to not renew their policies.

VII. Indemnification

1. We will indemnify and hold you harmless against all civil and administrative liability, including reasonable attorney's fees and reasonable costs of investigation and defense, arising as a direct result of:

   a. Our error or omission in preparing, processing, billing or servicing any policy or endorsement, except to the extent that you caused, contributed to, or compounded such error;

   b. Failure of a policyholder to receive notice of cancellation, nonrenewal, or any notice affecting coverage on direct bill business; where we send notices directly to the policyholder, except to the extent that you caused, contributed to, or compounded such failure;

   c. Our actual or alleged failure to comply with the requirements of the Fair Credit Reporting Act, Federal Truth in Lending Law, Fair Credit Billing Act, federal and state privacy laws, or failure to comply with the requirements of any other laws where you are using forms supplied by us, or following instructions or procedures

5

established by us, except to the extent that you caused, contributed to, or compounded such failure;

d. Our acts or omissions in our performance of loss control counseling, inspections, or similar work, or in the preparation of appraisals for your customers, except to the extent that you caused, contributed to, or compounded such acts or omissions; or

e. Your use of forms supplied by us, or following instructions or procedures established by us, including forms, instructions or procedures related to the use of our insurance scoring process on new or renewal business, except to the extent that your actual or alleged liability was caused, contributed to, or compounded by your failure to properly use such forms, or follow our instructions or procedures.

You will give us written notice as soon as you receive notice of any action relating to the liabilities referred to above. We will be entitled, but not required, to participate in such action or to assume the defense of any such action. If you fail to promptly notify us of any action, or fail to cooperate fully with us in the defense of such action, we will be relieved of our indemnification obligations regardless of whether or not we are prejudiced.

2. You will indemnify and hold us harmless against all civil and administrative liability, including reasonable attorney's fees and reasonable costs of investigation and defense, arising as a direct result of your acts, errors or omissions except to the extent that we caused, contributed to, or compounded such act, error or omission. We will give you written notice as soon as we receive notice of any action relating to the liabilities referred to in this subparagraph. If we fail to promptly notify you of any action, or fail to cooperate fully with you in the defense of such action, you will be relieved of your indemnification obligations regardless of whether or not you are prejudiced.

VIII. Arbitration

If any dispute or disagreement arises in connection with any interpretation of this Contract, its performance or non-performance, or any figures or calculations used, both parties will make every effort to meet and settle the dispute in good faith informally. If both parties cannot agree to a settlement of the dispute or disagreement, and if the dispute or disagreement does not involve our termination of this Contract or withdrawal of authority for any business, the matter in controversy will, upon written request of either party, be settled by arbitration. Arbitration will be conducted by JAMS, in accordance with its Arbitration Rules and Procedures then in effect. The arbitrator(s) will be chosen from JAMS' panel of arbitrators. Judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. A written and signed determination of the arbitrator(s) will be final and binding on the parties.

IX. Other Provisions

1. You may not assign or transfer this Contract, or any benefit or right under this Contract without our written consent.

2. We may amend this contract by giving you 90 days advance written notice, except for commission changes, which are governed by Section IV. Commissions. This Contract may also be amended in writing by mutual consent.

3. Upon our written request you will make available to us or our authorized representatives your books, records and related documents for inspection and audit. You will make these available during regular business hours at the place such books and records are kept. You will, also, upon our request, promptly provide us copies of applications, policies and related documents related to business you have with us.

4. You will notify us upon the sale, change in majority ownership, assignment, transfer, merger, or other change in control, of your agency, including the sale, assignment or transfer of all or a substantial portion of your agency's assets.

Agency
By: [signature]
Its Authorized Representative
Name: MARK J. SCHWAB
Title: PRESIDENT
Date: 4-7-05

Company
By: [signature] Mary L. Restelli
Its Authorized Representative Maryetta Restelli
Assistant Director
Name
Title
Date: APR 1 2 2005

6